**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

_____

                                 )

IN RE WESTAR, INC.           )      No. 03-cv-4003-JAR
SECURITIES LITIGATION   )
                                 )

_____)

### CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
### FINAL APPROVAL OF THE PROPOSED SETTLEMENT
### <u>AND THE PROPOSED PLAN OF ALLOCATION</u>

JOSEPH & HOLLANDER, P.A.
Stephen M. Joseph (Kansas Bar 07452)
Christopher M. Joseph (Kansas Bar 19778)
500 North Market Street
Wichita, KS 67214-3590
Phone: (316) 262-9393
Fax: (316) 262-9006


*Plaintiffs' Local Counsel*

SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.
Samuel P. Sporn
Joel P. Laitman
Christopher Lometti
Jay P. Saltzman
Frank R. Schirripa
19 Fulton Street, Suite 406
New York, NY 10038
Phone: (212) 964-0046
Fax: (212) 267-8137


*Plaintiffs' Lead Counsel*

### TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................3

III.    THE STANDARDS FOR JUDICIAL APPROVAL OF A CLASS ACTION
        SETTLEMENT.....................................................................................................7

IV.     THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS
        FOR APPROVAL OF CLASS ACTION SETTLEMENTS .............................8

        A.      The Proposed Settlement Was Fairly and Honestly Negotiated ..............8

        B.      Serious Questions of Law and Fact Existed that Placed
                the Ultimate Outcome of this Litigation in Doubt ...................................9

                1.      The Risks of Establishing Liability..........................................10

                2.      The Risks pf Establishing Scienter ..........................................11

        C.      The Value of an Immediate Recovery Far Outweighs the Possibility
                of Future Relief, If Any, After Protracted and Expensive  Litigation ..................13

                1.      The Value of the Settlement .....................................................14

                2.      Future Litigation Would be Protracted, Expensive and Very Risky .........15

        D.      The Reaction of the Class Supports Approval of the Settlement...........................18

        E.      The Judgment of the Parties that the Settlement is Fair and Reasonable .............19

V.      CLASS CERTIFICATION IS APPROPRIATE ..............................................20

        A.      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied.....................................21

                1.      Numerosity................................................................................21

                2.      Commonality..............................................................................22

                3.      Typicality ...................................................................................23

                4.      Adequacy of Representation ......................................................23

B.   This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3) Because
Common Questions of Law and Fact Predominate and a Class Action is
Superior to Other Methods of Addressing the Controversy ..................................24

VI.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED
AS FAIR, REASONABLE AND ADEQUATE ..............................................................25

VII.   CONCLUSION...................................................................................................................26

## **TABLE OF AUTHORITIES**

### **CASES**

*Airline Stewards  & Stewardesses Ass'n v. Trans* World *Airlines, Inc.,*
  630 F.2d 1164 (7th Cir. 1980) ........................................................7

*Amchem v. Windso*r,
  521 U.S. 591 (1997)...........................................................................25

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................18, 26

*Am. Employers' Ins. Co. v. King Res.* Co.,
  556 F.2d 471 (10th Cir. 1977) ..........................................8, 9, 10, 18

*Anderson v. Torrington Co.,*
  755 F. Supp. 834 (N.D. Ind. 1991) ...............................................9

*Anixter v. Home-Stake Prod. Co.,*
  77 F.3d 1215 (10th Cir. 1996) ......................................................17

 *Backman v. Polaroid Corp.,*
  910 F.2d 10 (1st Cir. 1990)...........................................................17

*In re Bank of Boston Corp. Sec. Litig.,*
  762 F. Supp. 1525 (D. Mass. 1991) .............................................19

*In re Bank One S'holders Class Action*,
  96 F. Supp. 2d 780 (N.D. Ill. 2000) .............................................20

*Basic v. Levinson*,
  485 U.S. 224 (1988).......................................................................25

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979)..........................................................17

*Bittinger v. Tecumseh Prods. Co.,*
  123 F.3d 877 (6th Cir. 1997) ........................................................23

*Bruch v. City of Topeka, Kansas, et al*,
  6:04-cv-01015-JAR-JPO..................................................................21

*In re Cendant Corp. Sec. Litig.,*
  264 F.3d 201 (3d Cir. 2001)...............................................9, 18, 20

*In re Charter Commc'n, Inc. Sec. Litig.*,
    MDL 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005)...........15 , 22, 25, 26

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................15

*Danis v. USN Commc'n, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999)........................................................20

*Dura Pharm. v. Broudo*,
    125 S.Ct. 1627 (2005)...............................................................10, 13

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ..........................................................14

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)...................................................................10

*In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...........................................................7, 20

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) .........................................................14

*In re IKON Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).....................................................14, 16

*In re Integra Realty Res., Inc.*,
    354 F.3d 1246, 1261 (10th Cir. 2004) .................................................8, 13

*J.B. ex rel. Hart v. Valdez*,
    186 F.23 1280 (10th Cir. 1999) ........................................................22

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ........................................................7, 8

*Kelly, et al v. Gillespie*,
    5:03-cv-04208-JAR-JPO..............................................................21

*Kerns v. SpectraLink Corp.*,
    No. 02-D-263, 2003 U.S. Dist. LEXIS 11711 (D. Colo. July 2, 2003)...........................24

*Krangel v. Golden Rule Resources, Inc.*,
    No. 98 C 901, 2000 U.S. Dist. LEXIS 10243 (E.D. Pa. July 22, 2000) .......................7, 16

*Lewy v. Weinberger*,
   464 U.S. 818 (1983)..................................................................................................7

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................12, 20

*Mashburn v. Nat'l Health Care, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) ..............................................................................16

*MCI Commc'n Corp. v. AT&T Corp.*,
   708 F.2d 1081 (7th Cir. 1983) .......................................................................................17

*In re Metro. Life Ins. Co. Sales Practices Litig.*,
   No. 96-168, 1999 U.S. Dist. LEXIS 22688 (W.D. Pa. Dec. 28, 1999) ...........................22

*Neuberger v. Shapiro*,
   110 F. Supp. 2d 373 (E.D. Pa. August 25, 2000).........................................................7, 16

*In re PaineWebber P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................................25

*In re Petro-Lewis Sec. Litig.*,
   No. 84-C-326, 1984 U.S. Dist. LEXIS 24881 (D. Colo. Dec. 28, 1984) .............15, 18, 21

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
   No. 77 C 39, 1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984)...........................14

*In re Prudential Ins. Co. of Am.*,
   148 F.3d 283 (3d Cir. 1998)...........................................................................................13

*Rex v. Owens*,
   585 F.2d 432, 436 (10th Cir. 1978) ...............................................................................21

*In re Ribozyme Pharms. Sec. Litig.*,
   209 F. Supp. 2d 1106 (D. Colo. 2002)............................................................................10

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. 00-CV-1014, 2004 U.S. Dist. LEXIS 13255 (E.D. Pa. July 12, 2004)...........12, 14, 16

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) .........................25

*Robbins v. Koger Props.*,
   129 F.3d 617 (11th Cir. 1997) .......................................................................................17

*Robinson v. Ford Motor Co.*,
   No. 1:04-CV-00844, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio June 15, 2005) ...............7

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ...........................................................................8, 23

*In re Safety Components Int'l Inc. Sec. Litig.*,
   166 F. Supp.2d 72 (D.N.J. 2001) ...........................................................................13, 16

*Seiffer v. Topsy's Int'l, Inc.*,
   70 F.R.D. 622 (D. Kan. 1976) ..............................................................................8, 18, 21

*Slomovics v. All For A Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ............................................................................10

*Trans World Airlines, Inc. v. Hughes*,
   312 F. Supp. 478 (S.D.N.Y. 1970) ............................................................................17

*United States v. 412.93 Acres of Land*,
   455 F.2d 1242 (3d Cir. 1972) ...................................................................................13

*In re United Telecom., Inc. Sec. Litig.*,
   No. 90-2251-O, 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) ...........................8, 9

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   219 F.R.D. 661, 666 (D. Kan. 2004)..............................................................21, 22, 23, 25

*Vaszlavik v. Storage Tech. Corp.*,
   No. 95-B-2525, 2000 U.S. Dist. 21129 (D. Colo. Mar. 10, 2000)....................8, 10, 14, 17

*Vigil v. Finesod*,
   No. 89-0927, 1990 U.S. Dist. LEXIS 20079 (D.N.M. Oct. 30, 1990) .......................14, 19

*Wagner v. StarMed Personnel*,
   5:02-cv-04127-JAR-KMH ........................................................................................21

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2003) ....................................................................................14

*Zipes v. TransWorld Airlines, Inc.*,
   455 U.S. 385 (1982) ..................................................................................................7

**<u>STATUTES</u>**

15 U.S.C. § 77z-1(a)(3)(B)(iii) ..........................................................................................24

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..........................................................................................24

I.      **INTRODUCTION**

Lead Plaintiffs Local 812 IBT Pension Fund and the American Radio Association Pension Fund (collectively, "Lead Plaintiffs") respectfully submit this memorandum of law in support of the proposed settlement (the "Settlement") of $30,000,000 in cash for the benefit of the Class of these consolidated class actions as set forth in the Stipulation and Agreement of Settlement dated May 31, 2005 (the "Stipulation").  The Settlement, negotiated at arms-length over months of difficult settlement negotiations, represents a remarkable recovery for the Class in the face of very substantial legal obstacles in a case few others believed represented a viable federal securities fraud class action.

On January 14, 2003 and thereafter, five separate securities class actions were filed in the United States District Court for the District of Kansas (the "Court") on behalf of purchasers of Westar Energy, Inc. ("Westar" or the "Company") common stock, alleging violations of the federal securities laws by certain of the defendants in this action.[1]  The gravamen of these complaints centered on accounting issues arising from a Federal Energy Regulatory Commission ("FERC") subpoena issued to Westar on December 26, 2002.

On May 2, 2003, the Court consolidated these actions into a single action (the "Action") under Case No. 03-4003-JAR.  On that date, in an uncontested motion, the Court appointed the Lead Plaintiffs and Schoengold Sporn Laitman & Lometti, P.C. ("SSLL") as Class Counsel.  The Amended Complaint filed by Lead Plaintiffs and Class Counsel, following their own investigation, set forth novel allegations, including that defendants materially misrepresented or omitted the financial consideration and other terms of the Westar restructuring (the

---

[1]      Those cases were styled as follows: *Kahn v. Haines*, No. 03-4003; *Epstein v. Westar Energy, Inc.*, No. 03-4007; *Giles v. Haines*, No. 03-4014; *Halvorsen v. Haines*, No. 03-4020; and *Vance v. Haines*, No. 03-4031.

"Restructuring") announced in March 2000 and materially omitted accurate disclosure of certain compensation and change of control schemes in Westar's Proxy filings. Thereafter, the Action was actively litigated until the parties, after arduous and contentious arms-length negotiations and mediation, entered into the Stipulation subject to the approval of the Court following notice to the Class and a fairness hearing pursuant to Federal Rule of Civil Procedure 23(c).

On June 6, 2005, the Court granted an Order preliminarily approving the proposed settlement and directed notice to the Class by first class mail and by publication. Class Counsel have duly complied with the Order, and the matter is now before the Court for a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

The Settlement is an excellent result and deserves the Court's approval. Class Counsel have achieved this recovery on behalf of the Class, which consists of all persons or entities that purchased the common stock of Westar during the period from March 29, 2000 to November 8, 2002 (the "Class Period").[2] The Class has agreed that this is an excellent settlement: although 17,095 notice packets have been sent to members of the Class, *no* Class member has objected to the proposed settlement.[3] Also, only 38 Class members who purchased 311.26 shares during the

---

[2]   Excluded from the class are the defendants Westar, David Wittig ("Wittig"), Douglas Lake ("Lake"), Paul Geist ("Geist"), Carl M. Koupal, Jr. ("Koupal"), Richard D. Terrill ("Terrill"), Gene A. Budig ("Budig"), Frank J. Becker ("Becker"), John C. Dicus ("Dicus") and John C. Nettels, Jr. ("Nettels"), the officers and directors of Westar, their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest. Also excluded from the Class are any persons who submitted valid and timely requests for exclusion from the Class, as provided for in the Stipulation and the Notice to the Class.

[3]   There were only four filed "objections," none of which related to the settlement itself. Mr. and Mrs. John Price made only a generalized statement that Westar's Board of Directors should pay for defendants Wittig's and Lake's legal representation. Ms. Lois Sheldon objected only to the exclusion of dividend reinvestment purchases. Although shares purchased through supplemental optional cash payments under the Dividend Reinvestment Plan are included, Class Counsel excluded Dividend Reinvestment participants who simply "rolled over" their dividend into Company shares since these "passive" acquisitions were not made in reliance upon material misrepresentations during the Class Period. *See In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1533 (D. Mass. 1991) (finding no reliance and, specifically, that fraud on the market theory is inapplicable to purchases made through

Class Period have elected to "opt out" of the Class.  This demonstrates almost unanimous support for the proposed Settlement.[4]

## II.  <u>BACKGROUND</u>[5]

Beginning on January 14, 2003, five lawsuits were filed by five separate plaintiffs and their counsel on behalf of purchasers of Westar common stock, alleging violations of the federal securities laws by the defendants.  These cases were all triggered by a December 26, 2002 announcement of a subpoena by the Federal Energy Regulatory Commission ("FERC") in connection with power trades with Cleco Corporation ("Cleco").  This announcement caused Westar stock to decline from $10.80 per share to $9.98 per share on December 30, 2002.  However, within one week, Westar's stock price had returned to over $10.00 per share, and, by the date of the Motion for Lead Plaintiffs and Lead Counsel on May 2, 2003, Westar's stock price had reached $14.00 per share.  Also, there was no further FERC inquiry into these trades.  This meant that, under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), there were no damages due to the FERC announcement since the PSLRA limits damages to the difference between the price paid and the mean trading price for the 90 day period after the corrective disclosure.

---

dividend reinvestment program).The remaining two objections – Mr. James Smith and the New York State Teachers Retirement System ("NYSTRS") – related solely to attorneys' fees issues.

[4]      Filed concurrently with this Memorandum is the Affidavit of Jose Fraga (the "Fraga Affidavit") re: (a) the mailing of the Notice of Pendency of Class Action and Proposed Settlement, Hearing on Proposed Settlement and Attorneys' Fee Petition and Right to Share in Settlement Fund; Proof of Claim, Acknowledgment and Release (the "Class Notice"); (b) the publication of a Summary Notice; and (c) requests for exclusion and objections received from Class members in response to the Class Notice.  Mr. Fraga is an employee of Garden City Group, Inc., the firm which was retained to assist in the process of providing notice to the Class and administration of the Settlement.

[5]      The Court is respectfully referred to the accompanying Declaration of Joel P. Laitman (the "Laitman Declaration") and the Memorandum of Law in Support of Attorneys' Fees and Reimbursement of Expenses for more detailed statements of the facts of this case.

Following the appointment of Lead Plaintiffs and Class Counsel, as set forth in the accompanying Laitman Declaration, new legal theories were investigated. This investigation included engaging a Kansas accounting expert who had followed the Kansas Corporation Commission ("KCC") proceedings in connection with the Westar Restructuring as well as forensic accounting and damages experts. Ultimately, substantial new allegations were asserted in the Amended Complaint filed on July 15, 2003.

The new legal claims included allegations that Westar had misrepresented or materially omitted disclosure of the true financial consideration being granted to its unregulated businesses in the Restructuring, and that Westar's Proxy filings contained inadequate disclosure of management compensation and change in control schemes. Though well-investigated and well-pleaded, these new legal claims posed substantial loss causation and damages hurdles because, as defendants have asserted, there arguably were no stock prices declines during the Class Period related to the alleged fraud.

The principal stock price decline during the Class Period (from $21.70 per share to $17.00 per share) took place between July 20, 2001 and July 25, 2001, following the KCC's rejection of the Restructuring and a concurrent rate increase. It is arguable that most of this stock price decline was not related to the disclosure of the "truth" regarding prior misrepresentations, but rather was only a market reaction to the rejection of a Restructuring plan and rate increase which the market favored. Further, the single stock price decline (by $0.80 per share) that could be attributed to the Proxy claims arguably occurred *before* any potentially corrective disclosure, and the remaining stock price decline during the Class Period (on November 7, 2002) was due to the announcement of Wittig's indictment for a bank fraud, which arguably was unrelated to the fraud alleged in the Amended Complaint and, in any event, was quickly followed by a stock

4

price rebound two days later.

Also, the Restructuring allegations were subject to statute of limitations defenses since public criticism of the financial terms of the Restructuring arguably began almost immediately after its announcement in March 2000, more than two years before even the original complaints were filed.

Following the filing of the Amended Complaint, defendants filed seven separate motions to dismiss, which raised these loss causation, damages and statute of limitations defenses.  Even had the dismissal motions been decided in Lead Plaintiffs' favor, many of these legal obstacles would have remained in the action, potentially limiting or precluding recovery at some later stage in the litigation.

Contributing to the difficulties faced by Lead Plaintiffs was the fact that Westar's detailed internal investigation and report prepared by Debevoise & Plimpton (the "Debevoise Report") found no grounds for a securities fraud claim.  (*See* Laitman Declaration at ¶ 10.)  Also, the criminal indictments brought against Wittig and Lake did not assert any federal securities law violations.

The intensive history of this litigation includes extensive factual and legal investigation by Class Counsel, both before filing the detailed Amended Complaint and before entering into Settlement discussions.  This investigation included: (a) retaining and consulting with an accounting expert familiar with the Restructuring and KCC proceedings in connection with the Restructuring; (b) retaining and consulting with a damages expert in connection with loss causation and damages in the Action; (c) retaining and consulting with an additional accounting expert regarding any accounting claims; (d) reviewing and analyzing the extensive KCC filings concerning the proposed Restructuring; (e) analyzing Westar's SEC filings concerning the

5

proposed Restructuring and Westar officer and director compensation; (f) collecting and reviewing a comprehensive set of analyst reports and major financial news service reports on Westar; and (g) reviewing and analyzing the Debevoise Report.

Lead Plaintiffs also extensively researched the applicable law, and had the benefit of defendants' briefing of their motions to dismiss in assessing the strengths and weaknesses of this action.  The parties also exchanged in-depth mediation briefs advocating the strengths of their respective positions and engaged in a rigorous mediation and negotiation process that stretched over six months.  The in-person mediation sessions occurred on December 1, 2004, January 31, 2005 and April 6 and 7, 2005, and utilizing the services of Gary McGowan, Esq. as mediator.  Also, there were numerous informal settlement discussions and negotiations.  Lead Plaintiffs, therefore, had a solid understanding of the strengths and weaknesses of their claims both factually and legally, before reaching a tentative resolution of the Action with the defendants.

In addition, as part of the Settlement process, defendants provided Class Counsel with access to hundreds of thousands of documents, and Class Counsel examined four key Westar officers, thereby providing additional insight into the strengths and weaknesses of the claims and defenses in this action.

Based on their investigation and discovery, Class Counsel have concluded that the terms of this Settlement are fair, reasonable and adequate, and in the best interests of Lead Plaintiffs and the Class.

### III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A CLASS ACTION SETTLEMENT

Courts favor compromise of disputed claims.  *Lewy v. Weinberger*, 464 U.S. 818, 822 (1983).  This policy is particularly strong in complex class action litigation.  *Airline Stewards  & Stewardesses Ass'n v. Trans* World *Airlines, Inc.,* 630 F.2d 1164, 1166-67 (7th Cir. 1980) ("Federal Courts look with great favor upon the voluntary resolution of litigation through settlement. ...  This rule has particular force regarding class action lawsuits."), *aff'd sub nom. Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385 (1982); *Robinson v. Ford Motor Co.*, No. 1:04-CV-00844, 2005 U.S. Dist. LEXIS 11673, at *8 (S.D. Ohio June 15, 2005) ("The law generally favors the settlement of complex class actions.") (citation omitted); *Krangel v. Golden Rule Resources, Inc.*, No. 98 C 901, 2000 U.S. Dist. LEXIS 10243, at *8 (E.D. Pa. July 22, 2000) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources an be conserved by avoiding formal litigation").

Furthermore, Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter within the discretion of the district court.  *See, e.g.*, *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 323 (10th Cir. 1984).  The Court has a duty to act "as a fiduciary for absent class members." *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. August 25, 2000) (citing *In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (Rule 23(e) "requires courts to 'independently and objectively analyze the evidence and circumstance before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished'")).  Thus, before approving a class action settlement, a court must determine that it is "fair, reasonable and adequate."  *Jones*, 741 F.2d at 323.

In assessing whether the settlement is fair, reasonable and adequate, the Tenth Circuit mandates that courts consider the following:

(1)     whether the proposed settlement was fairly and honestly negotiated;

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Jones*, 741 F.2d at 324; *see also In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 188 (10th Cir. 2002).[6]

## IV.     THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

### A.     The Proposed Settlement Was Fairly and Honestly Negotiated

In assessing the fairness of a settlement, courts look to ensure that the settlement was fairly and honestly negotiated.  *See Rutter & Wilbanks*, 314 F.3d at 1189 (rejecting argument that defendants colluded with plaintiffs when they agreed to class certification in connection with settlement after opposing certification earlier in the litigation); *Am. Employers' Ins. Co. v. King Res.* Co., 556 F.2d 471, 475 (10th Cir. 1977); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. 21129, at *4-5 (D. Colo. Mar. 10, 2000).  The focus of this inquiry is on the settlement process itself and on whether the negotiations involved arms-length negotiations by

---

[6]     In addition, courts examine whether notice of the settlement was adequate.  *See In re United Telecom., Inc. Sec. Litig.*, No. 90-2251-O, 1994 U.S. Dist. LEXIS 9151, at *5 (D. Kan. June 1, 1994); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 626 (D. Kan. 1976).  Here, as set forth in the Fraga Affidavit, notices were sent to potential Class members or their nominees on June 23, 2005.  In addition, a summary notice of the settlement was published on June 30, 2005 in the national edition of *The Wall Street Journal* as well as *The Kansas City Star*, *The Topeka Capital-Journal* and the *Wichita Eagle*. *Id.*  Therefore, notice complied with the mandates of Fed. R. Civ. P. 23(e) and due process.

experienced counsel with adequate information to represent the Class effectively.  A strong presumption of fairness attaches to a settlement agreement when it is the result of arms-length negotiation and the number of objectors is relatively small.  *See Am. Employers' Ins.*, 556 F.2d at 476; *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *Anderson v. Torrington Co.*, 755 F. Supp. 834, 837-38 (N.D. Ind. 1991).

The Settlement negotiations here were extensive and hard-fought, and took place at arms-length between experienced and skilled attorneys.  In particular, the settlement negotiations in this case, among other things: (i) occurred over a period of more than six months of both formal and informal negotiations; (ii) involved four mediation sessions with Mr. Gary McGowan on December 1, 2004; January 31, 2005 and April 6 and 7, 2005; (iii) involved numerous intensive and extensive in-person and telephonic meetings between defendants' Counsel and Class Counsel apart from the mediation sessions; and (iv) included the drafting and presentation of detailed mediation statements setting forth the parties' legal and factual positions. The presumption of fairness clearly should attach in this case and is confirmed by examination of the record, which clearly shows extensive arms-length negotiations.  *See United Telecom.*, 1994 U.S. Dist. LEXIS 9151, at *6-7 (D. Kan. June 1, 1994) (settlement affirmed as "fully negotiated" after two rounds of mediation).

### B.     Serious Questions of Law and Fact Existed that Placed the Ultimate Outcome of this Litigation in Doubt

In determining whether a settlement is reasonable, fair and adequate, courts in the Tenth Circuit examine whether there were effective defenses to plaintiffs' allegations that could place the ultimate outcome of the litigation in doubt for the plaintiffs.  *See Am. Employers' Ins.*, 556 F.2d at 476 ("there is merit to the denial by the defendants . . . of plaintiff's contentions and to

defendants' contention that plaintiff knew or should have known of the facts amounting to alleged fraudulent misrepresentations"); *Vaszlavik*, 2000 U.S. Dist. 21129, at *5-6 (in an ADEA/ERISA case, there were significant disputes about evidence and certification of the class).

Securities litigation generally involves complex issues of fact and law, and this action is no exception. To succeed on claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), a plaintiff must establish, *inter alia*, that: (i) each defendant was responsible for an omission or a misstatement; (ii) the false statement or omission was material; (iii) the false statement or omission was made with scienter; and (iv) the plaintiff was damaged thereby. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *In re Ribozyme Pharms. Sec. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

Several potentially considerable obstacles to ultimate recovery on the merits exist in this case, which were factors in Lead Plaintiffs' judgment to enter into the Stipulation of Settlement at this time. These obstacles included, among others: (i) establishing that Westar made material misrepresentations or omissions throughout the Class Period; (ii) establishing that the defendants acted with the requisite degree of scienter, *see Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (noting the difficulty of proving scienter at trial); (iii) establishing that declines in Westar stock price were caused by the revelation of the alleged fraud, especially in light of the Supreme Court's decision in *Dura Pharm. v. Broudo,* 125 S.Ct. 1627 (April 19, 2005); (iv) establishing the roles of specific individual defendants in the fraud; and (v) proving the many complex issues during a trial which could last weeks.

## 1. <u>The Risks of Establishing Liability</u>

As set forth above, at the time SSLL filed the Complaint on behalf of Lead Plaintiffs, many of the originally filed allegations had become largely non-actionable since Westar's stock

price rebounded, thereby arguably eliminating any damages in connection with the FERC subpoena. Thus, the $30,000,000 cash settlement is a remarkable recovery given that, but for the action of Lead Plaintiffs, there potentially would be a recovery of *zero dollars* for the Class.

Moreover, as noted above, there were significant statute of limitations, loss causation and damages defenses even as to the newly asserted claims. Also, the Debevoise Report concluded that there were no fraudulent misrepresentations or omissions, and the federal government did not accuse Wittig and Lake of securities law violations.

Lead Plaintiffs also faced the difficulty of establishing that the defendants made material misrepresentations or omissions with scienter. Establishing the roles of the numerous specific individual defendants in the various complex fraudulent schemes would have been a difficult task.

While Lead Plaintiffs were confident of their ability to prove their claims and to effectively rebut defendants' contentions, Lead Plaintiffs recognized the force of defendants' arguments, and that a jury could place considerable weight upon the credibility and testimony of defendants and the other witnesses they would present at trial, many of whom are well-respected local businessmen, and all of whom would deny any knowledge of a fraud. Thus, defendants possessed strong defenses to the claims asserted, and there were substantial risks in litigating the claims to trial.

## 2. The Risks of Establishing Damages

Even if Lead Plaintiffs were to overcome the above obstacles and were successful in establishing liability, there were substantial risks in proving damages which are avoided by virtue of this proposed Settlement. In a Section 10(b) action, the range of damages is the "out of pocket" damages measure, *i.e.*, "the difference between the purchase price and the value of the

11

stock [*i.e.,* value absent the fraud] at the date of purchase." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (citation omitted). The determination of damages, like the determination of liability, is a complicated and uncertain process, involving the determination of loss causation (*i.e.*, a causal connection between the misrepresentation and the loss), *Dura,* 125 S.Ct. at 1631, and typically involves conflicting expert opinions. Expert testimony about damages could rest on many assumptions, and a jury's reaction to such complex expert testimony is highly unpredictable. Conceivably, a jury could find that damages were only a fraction of the amount that Lead Plaintiffs contend.

As noted above, in this action, defendants have argued that the decline in Westar's stock price on and after July 20, 2001 was a market reaction to the KCC's regulatory actions and not due to the alleged misrepresentations; that the price drop on June 28, 2002 took place *before the* alleged corrective disclosure occurred; and that the stock price decline on November 7, 2002 was due to the announcement of a bank fraud that was unrelated to the misrepresentations alleged in the Amended Complaint and was followed by a stock rebound two days later. Loss causation, always a problem for plaintiffs, surely would be a tremendous risk to recovery in this case. *See In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2004 U.S. Dist. LEXIS 13255, at *30 (E.D. Pa. July 12, 2004) (stating that this factor also favors approval of settlement since it would be a "significant risk" for plaintiffs to prove that "the amount of claimed damages was the result of the Defendants' alleged misrepresentations and not other market-affecting events").

Moreover, in the interim, the Supreme Court decided in *Dura* that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." 124 S.Ct. at 1631. Defendants would undoubtedly argue that *Dura* bolsters their arguments that Westar's stock price drops were unrelated to the alleged fraud, and therefore that the Class did not suffer

12

any damages as a result of any alleged misstatements.  124 S. Ct. at 1631-32.

Indeed, the damages assessments of Lead Plaintiffs' and defendants' experts who would be called at trial were sure to vary substantially, and this crucial element therefore would have been reduced to a "battle of the experts" at trial, leaving the trier of fact with difficult questions to resolve.  In such a battle, Class Counsel recognize the possibility that a jury could be swayed by experts for the defendants, who could minimize or eliminate the amount of the Class's losses. *See, e.g., United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) ("The jury . . . is under no obligation to accept as completely true the testimony of any expert witness.  It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it").[7]

### C.     The Value of an Immediate Recovery Far Outweighs the Possibility of Future Relief, If Any, After Protracted and Expensive Litigation

The Tenth Circuit has held that the value of an immediate recovery is simply the monetary worth of the settlement.  "[T]hat value is to be weighed . . . against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation."  *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993). Courts typically evaluate "whether the settlement represents a good value for a weak case or a poor value for a strong case."  *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *32-33 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2003)); *Vigil v. Finesod*, No. 89-0927, 1990 U.S. Dist. LEXIS 20079, at *13 (D.N.M. Oct. 30, 1990), *recommendation adopted*,

---

[7]          In addition, there is always the risk that the class certification may be amended or reconsidered at any time before final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C); *see also In re Integra Realty*, 354 F.3d at 1261 ("a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment"); *In re Safety Components Int'l Inc. Sec. Litig.*, 166 F. Supp.2d 72, 91 (D.N.J. 2001) (quoting *In re Prudential Ins. Co. of Am.*, 148 F.3d 283, 321 (3d Cir. 1998)) ("there will always be a risk or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement")).

779 F. Supp. 522 (D.N.M. 1990) ("If the proposed settlement is not approved, the result will be a much more expensive course of litigation and there is no assurance that the final result will in any way be superior."); *Vaszlavik*, 2000 U.S. Dist. 21129, at \*7 ("in light of the cost and risk of non-recovery, I conclude that the value of certain and immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.").[8]

### 1.      The Value of the Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  In fact, a settlement can be approved even when it amounts to only a small percentage of the recovery sought.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth part of a single percent of the potential recovery").

Here, the $30 million settlement for the Class is an excellent result in both absolute terms and when balanced against the numerous risks facing Lead Plaintiffs that are set forth above. This amount is at the "high end" of securities class action settlements other than "mega" settlements such as Enron, WorldCom, Cendant and the "IPO" cases.  For example, *The Wall Street Journal* on May 10, 2004 reported that "The median settlement in 2003 totaled $9.5 million in cases that involved regulatory investigations, compared to $5.3 million in cases that didn't[.]" (*citing* 2004 study by Cornerstone Research).

---

[8]      In evaluating the strengths and weaknesses of Lead Plaintiffs' case, the court should not conduct something akin to a trial on the merits, *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 181 (E.D. Pa. 2000) ("the court should avoid conducting a mini-trial and must, 'to a certain extent, give credence to the estimation of the probability of success proffered by class counsel.'"), and should refrain from "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at \*1-2 (N.D. Ill. Sept. 14, 1984).

Moreover, according to Lead Plaintiffs' damages expert, the Settlement represents approximately 29% of realistic maximum damages of $103,000,000, which is well above the 5%-6% norm in securities class actions.  *See In re Charter Commc'n, Inc. Sec. Litig.*, MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *52 (E.D. Mo. June 30, 2005).  Thus, this Settlement represents the recovery of a significant portion of the Class's realistically recoverable damages in this action.

## 2.  Future Litigation Would be Protracted, Expensive and Very Risky

Courts have held that avoiding the complexity, expense and likely duration of extensive and risky litigation weighs in favor of approving a class action settlement.  *In re Petro-Lewis Sec. Litig.*, No. 84-C-326, 1984 U.S. Dist. LEXIS 24881, at *20 (D. Colo. Dec. 28, 1984) ("If this action is not settled, it is obvious that the litigation would be protracted for years and would be immensely expensive to all concerned.  Given the complexity of the factual and legal issues, . . . and the likelihood of appeals after trial, it is likely that, absent settlement, the plaintiffs would collect nothing for many years even if they did win at trial."); *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *24-25 (upholding settlement where continuing litigation would "likely require additional discovery, extensive pretrial motions practice (including summary judgment motions), a trial" and "[a]bsent a settlement, this action likely would not be resolved for several additional years").  Indeed, early settlements with limited discovery are encouraged.  *See Krangel*, 194 F.R.D. at 507 ("The fact that this case is in early stage of proceedings does not necessarily weigh against approval of the settlement."); *Mashburn v. Nat'l Health Care, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("The law is clear that early settlements are to be encouraged."); *see also In re Safety Components,* 166 F. Supp.2d at 88 (finding that settlement at an early stage, without formal discovery, avoids "additional expenses [that] would have diminished the funds available

15

to satisfy a judgment").  To approve a settlement, however, "the Court need not find that the parties have engaged in extensive discovery." *Neuberger*, 110 F. Supp. 2d at 379.

As noted above, federal securities class actions by definition involve complicated issues of law and fact, and this action is even more complex and difficult than the norm.  *See Krangel*, 2000 U.S. Dist. LEXIS 10243, at *19 (citing *In re IKON*, 2000 U.S. Dist. LEXIS 2749, at *18) ("Securities class actions are inherently complex").  This action is replete with complexity in both establishing liability and in proving damages, thereby placing at serious risk the possibility of Lead Plaintiffs ever recovering anything in this matter.  As set forth above, defendants have asserted that Westar's stock price declines were unrelated to the alleged fraud and that any problems with the Restructuring were publicly disclosed at least two years prior to the filing of the Amended Complaint.  Moreover, Lead Plaintiffs' claims were asserted not merely against Westar and its chief executive and financial officers, but also against certain outside directors. Each of these defendants had different relationships and connections to the alleged fraud requiring different levels of proof.  Added to the complexity of the case was the prospect of a long and extensive litigation.

Further, this case required the engagement of experts in regulatory proceedings before the KCC, and accounting and damage experts.  In assessing the merits of the Settlement, Class Counsel considered the wide-ranging factual and legal questions which were vigorously disputed in the Action.  Class Counsel were aware that many of the defenses which had been asserted and would be asserted by defendants had some possibility of success.  This uncertainty made the ultimate outcome of the case problematic, especially when weighed against the immediate and tangible benefits conferred by the Settlement.

Additional discovery in this case would have been complex and time consuming given

16

the multiple defendants and that Lead Plaintiffs were likely to encounter hostile witnesses who would not admit wrongdoing.    Although Lead Plaintiffs had already engaged in extensive investigation at the time of the Settlement, a great deal more was anticipated.    In addition, experts would also have to be designated and extensive expert discovery conducted.    Defendants' inevitable multiple motions for summary judgment would have to be briefed and argued, a pretrial order would have to be prepared, proposed jury instructions would have to be submitted and motions *in limine* would have to be filed and argued.    Whatever the outcome of trial, appeals could be taken to the Tenth Circuit and perhaps even to the United States Supreme Court.    As previously noted, even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal or as a result of a judgment notwithstanding the verdict.    *See, e.g., MCI Commc'n Corp. v. AT&T Corp.*, 708 F.2d 1081 (7th Cir. 1983) ($1.8 billion antitrust judgment remanded for new trial on damages in an opinion that was likely to significantly reduce any damage award in second trial and, in fact, the second trial produced a dramatically smaller award).    All of the foregoing would have extended the case and delayed the Class's ability to recover for years.[9]

Accordingly, settlement at this juncture provides a substantial and tangible present recovery, without the attendant risk and delay of complex, expensive and prolonged litigation

---

[9]        *See also Robbins v. Koger Props.,* 129 F.3d 617 (11th Cir. 1997) (overturning an $81 million jury verdict for the plaintiff class on loss causation grounds and ordering the entire litigation dismissed); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning a plaintiffs' verdict obtained after two decades of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing a $38 million jury verdict and dismissing the case, resulting in a *total* loss after ten years of active litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing an $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (reversing a $145 million judgment after years of appeals and on a theory that defendant had not raised or argued).    Here, Class Counsel have taken into account the risk that Lead Plaintiffs might be unable to convince the courts as to Defendants' liability.    Many of the issues in this action would turn on close factual questions at trial.    While Lead Plaintiffs believe they could and would overcome these hurdles, they nonetheless constitute risks to Lead Plaintiffs' ultimate ability to establish defendants' liability.

and trial. *See Vaszlavik*, 2000 U.S. Dist. LEXIS 21129, at *7; *Petro-Lewis*, 1984 U.S. Dist. LEXIS 24881, at *20; *Seiffer*, 70 F.R.D. at 629 ("The risk of ultimately recovering money damages dogs the heels of even able and zealous counsel, and this is especially true in a case of this magnitude and complexity.").

### D.   The Reaction of the Class Supports Approval of the Settlement

In addition, the reaction of the Class to the settlement is another indicator that the value of the settlement is outstanding. *Am. Employers' Ins.*, 556 F.2d at 476. A low number of objectors provides a strong indicator in favor of approving the settlement. *Id.* ("The vast majority of the class members either affirmatively support the proposed settlement or at least do not object to it; in fact [there is only one objector]"); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (settlement warrants approval where there were no objections and only five shareholders sought exclusion); In *re Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of settlement").

As discussed above, 17,095 notice packets were sent to potential Class members or their nominees. *See* Fraga Affidavit. The deadline for Class members to file objections to the Settlement was August 10, 2005. No Class member has objected to the Settlement itself, and only 38 class members who purchased 311.26 shares (less than .01% of the shares purchased during the Class Period) have sought to be excluded from the Settlement. *Id.* As noted, of the four "objections" (representing .01 % of the Class) two were expressly limited to attorneys' fees issues, one was a generalized request for the Board of Directors to pay for defendants Wittig's and Lake's legal fees, and the last, was an objection to the exclusion of dividend reinvestment.

18

However, dividend reinvestment should not included since they were not independent investment decisions based on the alleged misrepresentations and omissions during the Class Period.  *See In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1533 (D. Mass. 1991) (finding no reliance and, specifically, that fraud on the market theory is inapplicable to purchases made through dividend reinvestment program).  Thus, the favorable reaction of the Class is further evidence that the Settlement is fair, reasonable, and adequate.

### E.   The Judgment of the Parties that the Settlement is Fair and Reasonable

Recommendations made in good faith by experienced counsel are entitled to acceptance by the Court.  *See Vigil*, 1990 U.S. Dist. LEXIS 20079, at *13.  By reviewing the stage of the proceedings and the amount of investigation completed, a court can determine whether the parties have had access to sufficient material to evaluate their case and arguments and, on an informed basis, to assess the adequacy of the proposed settlement in light of the case's strengths and weaknesses.  *See In re Cendant*, 264 F.3d at 235 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813) ("Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating")).

Here, settlement was reached after grueling negotiations at which the parties presented detailed mediation briefs and set forth their factual and legal positions, and following (a) full briefing of seven motions to dismiss; (b) extensive and intensive investigation by Lead Plaintiffs in the development of the allegations; (c) retention of regulatory, accounting and damage experts; (d) review of hundreds of thousands of documents, including the Debevoise Report and its attached exhibits, KCC reports and filings, and hundreds of thousands of documents produced by defendants; and (e) examination of key Westar employees.  Thus, both Class Counsel and defendants' counsel possessed a thorough record and a great deal of information upon which to

19

evaluate the merits of the Lead Plaintiffs' claims, the strengths of the defenses asserted by defendants, and the value of Lead Plaintiffs' claims for purposes of settlement.

Class Counsel in this case, who are able and experienced, have received national recognition for their efforts in the class action field.  The law firms of Schoengold Sporn Laitman & Lometti, P.C. and Joseph & Hollander, P.A. are well known nationally and to this Court.  *See*, *e.g., Maley*, 186 F. Supp. 2d at 358 (court commended SSLL for "go[ing] the extra mile" in obtaining a settlement representing approximately 41% of the maximum recoverable damages incurred by the class); *In re Bank One S'holders Class Action*, 96 F. Supp. 2d 780 (N.D. Ill. 2000); *Danis v. USN Commc'n, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999); *Bruch v. City of Topeka, Kansas, et al*, 6:04-cv-01015-JAR-JPO; *Kelly, et al v. Gillespie*, 5:03-cv-04208-JAR-JPO; *Wagner v. StarMed Personnel*, 5:02-cv-04127-JAR-KMH.  In addition, the defendants are represented by numerous nationally-known counsel with vast experience in civil litigation and securities class actions, including Davis, Polk & Wardwell; Bryan Cave; Armstrong Teasdale; Hughes Hubbard & Reed; and Berkowitz Stanton Brandt Williams & Shaw.  Thus, the opinions of the parties that the Settlement is fair, reasonable and adequate deserve great weight herein. *See Seiffer*, 70 F.R.D. at 630 ("We are cautioned not to substitute our own business judgment for that of counsel.") (citation omitted).

## V.    CLASS CERTIFICATION IS APPROPRIATE

Class actions created for the purpose of settlement are well recognized under Rule 23. *See e.g. Petro-Lewis,* 1984 U.S. Dist. LEXIS 24881, at *13.  Lead Plaintiffs submit that the Preliminary Approval Order entered by this Court on June 6, 2005 properly certified the Class for settlement purposes pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for the following reasons.

20

A.      **The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied**

1.      **Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  "In order to satisfy this numerosity requirement, plaintiffs 'must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.'"  *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 666 (D. Kan. 2004) (quoting *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978)).  Here, joinder of all Class members is plainly impracticable.  As set forth in the Amended Complaint, Westar common stock was actively traded throughout the Class Period and, as of April 21, 2003, there were approximately 71,938,146 shares of Westar common stock outstanding.  Accordingly, there cannot be any dispute that there are many thousands of members of the Class and the Class is sufficiently numerous under Rule 23(a)(1).

2.      **Commonality**

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law or fact common to the class."  Rule 23 does not require that all members of the class be identically situated, but rather that "only a single issue [is] common to the class."  *See Universal Serv.*, 219 F.R.D. at 666 (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.23 1280, 1288 (10th Cir. 1999)).  Commonality in securities class actions is an element that is therefore usually "easily met."  *In re Metro. Life Ins. Co. Sales Practices Litig.*, No. 96-168, 1999 U.S. Dist. LEXIS 22688, at *58 (W.D. Pa. Dec. 28, 1999) (citation omitted).  In this Action, the commonality requirement is easily satisfied by the predominance of common questions of law and fact, which include, among others:

(i)      whether the federal securities laws were violated by defendants' acts as

21

alleged in the Complaint;

(ii)      whether defendants issued false and misleading statements in connection with the Restructuring and Westar's Proxy filings during the Class Period;

(iii)      whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(iv)      whether, during the Class Period, the market price of Westar stock was artificially inflated due to the material misrepresentations and/or non-disclosures complained of, and

(v)      whether the Class has sustained damages and, if so, the proper measure of damages.

Securities fraud actions that seek to be certified as class actions for purposes of settlement, and which contain common questions such as the common questions enumerated above have repeatedly been held to meet the requirements for class certification. *See, e.g., Charter Commc'n.* 2005 U.S. Dist. LEXIS 14772, at *36-38 (certifying settlement class where complaint alleged claims under the federal securities laws). Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.      <u>Typicality</u>

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied if the claims or defenses of the representative parties are based on the same legal or remedial theory; factual differences between a proposed class representative and other members of the class do not preclude a finding of typicality. *See Universal Serv.*, 219 F.R.D. at 667. In addition, the test for typicality, like commonality, is "not demanding." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (citation omitted).

The Lead Plaintiffs stand in the same position as other Class Members here. All claims

arise from the same nucleus of operative facts and under identical legal theories.  The unlawful acts the defendants are alleged to have committed affected the entire Class uniformly and the legal claims that flow from those allegations are the same for Lead Plaintiffs and the entire Class. Thus, typicality exists.

### 4.  <u>Adequacy of Representation</u>

The standards of Rule 23(a)(4) are met if it appears that (1) the class representatives' interests are not antagonistic to those of other members of the class that they seek to represent; and (2) the class representatives and their attorneys have prosecuted the action vigorously.  *See Rutter*, 314 F.3d at 1187-88.  These requirements are satisfied here.

Here, the Lead Plaintiffs are adequate representatives of the Class.  Lead Plaintiffs, in their sworn certifications filed in connection with their motion to be appointed Lead Plaintiffs, stated their willingness to represent the Class.  Indeed, in appointing the Lead Plaintiffs in this Action, the Court made a preliminary determination that Rule 23's adequacy and typicality requirements were satisfied.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).  Lead Plaintiffs, moreover, have no interests antagonistic to those of the Class.  They are clearly adequate under Rule 23.

In addition, Class Counsel, who, as set forth above, are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States, are clearly competent to conduct this Action.[10]  Here, Class Counsel diligently and aggressively represented their clients and the Class before this Court and in the negotiations with defendants' counsel that resulted in the Settlement.

---

[10]      *See* Laitman Declaration, Exs. C and D.

**B.      This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3) Because Common Questions of Law and Fact Predominate and a Class Action is <u>Superior to Other Methods of Addressing the Controversy</u>**

Rule 23(b)(3) requires that common issues of law and fact predominate over individual issues.  Courts look to the "common nucleus of operative facts" to determine predominance of common questions.  *Kerns v. SpectraLink Corp.,* No. 02-D-263, 2003 U.S. Dist. LEXIS 11711, at *6-7 (D. Colo. July 2, 2003) (predominance requirement subsumed under commonality requirement).  This case turns upon allegations of a common course of conduct on the part of the defendants that injured the Class.  The common issues of law and fact that flow from defendants' alleged wrongful conduct are at the heart of this case and plainly predominate.  In *Basic v. Levinson*, 485 U.S. 224 (1988), the Supreme Court held that application of the "fraud on the market" theory, which Lead Plaintiffs rely upon in this case to establish the element of reliance, results in the predominance of common issues and permits class action treatment.  In *Amchem v. Windso*r, 521 U.S. 591, 625 (1997), the Supreme Court observed that predominance is "readily met" in certain cases alleging securities fraud.  Thus, common issues predominate.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy."  That is clearly the case here because, as with other securities fraud actions, this action involves large numbers of plaintiffs with relatively small individual claims.  The class mechanism is the best way of resolving all class members' claims and sparing the judicial system expense and burden of dealing with even a handful of duplicative lawsuits.  *See Universal Serv.,* 219 F.R.D. at 679.  Accordingly, the Court should certify the Class here.

**VI.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE**
**       APPROVED AS FAIR, REASONABLE AND ADEQUATE**

Review of the Plan of Allocation falls within this Court's broad supervisory power over the Settlement, its proceeds, and their ultimate disposition. *See In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997) ("The review of the plan of allocation is squarely within the discretion of the district court.").  In assessing a plan of allocation, "[t]he same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *9 (N.D. Ill. Dec. 6, 2001); *see also Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, at.*33-34.

In determining the fairness, reasonableness and adequacy of a proposed plan of allocation, courts give great weight to the opinion of qualified counsel. *See Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, *34 ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel'") (quoting *Am. Bank Note Holographics*, 127 F. Supp. 2d at 429-30).

Here, the Plan of Allocation is plainly fair to the Class in its entirety, and is based on the principles stated in *Charter*: "it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases and sales of the securities at issue." 2005 U.S. Dist. LEXIS 14772, at *33 (citation omitted).

While the Plan of Allocation reflects Lead Plaintiffs' allegations that the price of Westar common stock was artificially inflated as a result of the alleged wrongful conduct, it also takes into account defendants' contentions that stock price declines were not entirely attributable to the

alleged fraud.  To reflect these difficulties, the Plan of Allocation discounts the "Recognized Loss" on purchases made after July 21, 2001, the date following the KCC's announced rejection of the Restructuring, or June 28, 2002, the presumed date of the disclosure of the resignation of Westar's outside director Jane Sadaka and her opposition to the compensation of certain members of Westar management.

Finally, the fact that not one Class Member – each of whom has a real interest that the proceeds of the Settlement Fund are allocated fairly – has objected to the Plan of Allocation is compelling evidence that the Plan is both fair and reasonable.

## VII.   <u>CONCLUSION</u>

The proposed Settlement brings a substantial and certain benefit to the Westar shareholders and permits Westar to avoid the time and expense of complex litigation.  This Settlement is the result of extensive and intensive litigation and arms-length negotiations by counsel for the parties, including extensive mediation, and after Class Counsel completed exhaustive discovery, including the review of hundreds of thousands of pages of documents and the examination of four key Westar officers, confirming the fairness of the Settlement.  Based on their evaluation of the facts and governing legal principles, and their recognition of the substantial risks inherent in continued litigation of this Action, Lead Plaintiffs submit that the proposed Settlement is in the best interests of the Class.  For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable and adequate.

DATED:        August 25, 2005
              Topeka, Kansas

                                           Respectfully submitted,

By:   /s/ Christopher M. Joseph            By:   /s/ Joel P. Laitman
Stephen M. Joseph (Kansas Bar 07452)       Samuel P. Sporn
Christopher M. Joseph (Kansas Bar 19778)   Joel P. Laitman
                                           Christopher Lometti
                                           Jay P. Saltzman
                                           Frank R. Schirripa

**JOSEPH & HOLLANDER, P.A.**               **SCHOENGOLD SPORN LAITMAN &
500 North Market Street                    LOMETTI, P.C.**
Wichita, KS 67214-3590                      19 Fulton Street
Phone: (316) 262-9393                       New York, New York 10038
Fax: (316) 262-9006                         Phone: (212) 964-0046
                                            Fax: (212) 267-8137

*Plaintiffs' Local Counsel*                *Plaintiffs' Lead Counsel*

27