**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

_____

)
IN RE WESTAR, INC.                                    )          No. 03-cv-4003-JAR
SECURITIES LITIGATION                          )
)
_____)


**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**CLASS COUNSELS' PETITION FOR ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES**

JOSEPH & HOLLANDER, P.A.
Stephen M. Joseph (Kansas Bar 07452)
Christopher M. Joseph (Kansas Bar 19778)
500 North Market Street
Wichita, KS 67214-3590
Phone: (316) 262-9393
Fax: (316) 262-9006



*Plaintiffs' Local Counsel*

SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.
Samuel P. Sporn
Joel P. Laitman
Christopher Lometti
Jay P. Saltzman
Frank R. Schirripa
19 Fulton Street, Suite 406
New York, NY 10038
Phone: (212) 964-0046
Fax: (212) 267-8137



*Plaintiffs' Lead Counsel*

## TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND ................................................................................................2

III.   THE AWARD REQUESTED BY CLASS COUNSEL IS FAIR AND
       REASONABLE BASED ON THE PSLRA STANDARD AND THE *JOHNSON*
       FACTORS...........................................................................................................6

       A.    Standards for Awarding Attorneys' Fees in Common Fund Cases ........................6

             1.    An Award Fees of 30% Is Well Within the Standard
                   Award in Similar Cases ...........................................................8

             2.    An Award of 30% Is Even More Appropriate Here Given
                   Both the Originality of the Work and Difficulty and
                   Undesirability of the Case.........................................................9

       B.    The Fee Request Meets the Requirements of the *Johnson* Factors ...................10

             1.    Time and Labor Required:  The Lodestar Cross-Check
                   Confirms that the Requested Fee Is Fair and Reasonable.........................11

             2.    The Novelty and Difficulty of the Litigation:
                   Risks of Establishing Liability and Damages ...........................................13

             3.    The Requisite Skill to Perform the Legal Services Properly ....................14

             4.    This Case Precluded Other Employment by Class Counsel ....................15

             5.    Customary Fee: The 30% Award Requested by Class
                   Counsel Is Within the Range of Awards in Similar Cases ........................16

             6.    Contingent Nature of the Fee....................................................16

             7.    The Time Limitations Imposed by the Client or Circumstances ...............18

             8.    The Amount Involved and Results Obtained..............................................18

             9.    The Experience, Reputation and Ability of the Attorneys........................19

             10.   The Undesirability of the Case ................................................20

             11.   The Nature and Length of the Professional
                   Relationship with the Client....................................................21

12.    Awards in Similar Cases ...........................................................................21

C.    The Reaction of Class Members Favors the Requested Award ...........................21

IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES ...............24

V.    CONCLUSION .................................................................................................................25

## **TABLE OF AUTHORITIES**

### **CASES**

*In re APAC Teleservices, Inc. Sec. Litig.*,
    No. 97-9145, slip op. at 2-3 (S.D.N.Y. Dec. 10, 2001) ....................................................10

*In re Baan Co. Sec. Litig.*,
    288 F. Supp. 2d 14 (D.D.C. 2003) ...................................................................................7

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991) ................................................................................22

*In re Bank One S'holder Class Actions*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ...............................................................................20

*Behrens v. Wometco Enter., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988) ....................................................................................17

*Blum v. Stenson*,
    465 U.S. 886 (1984) ........................................................................................................6

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................................................6

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) ............................................................................23

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ........................................................................................16

*Bruch v. City of Topeka, Kansas, et al*,
    6:04-cv-01015-JAR-JPO ................................................................................................20

*Camden I Condo. Assoc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ..........................................................................................8

*In Re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...........................................................................................11

*In re Cendant Corp. Sec. Litig.*,
    243 F. Supp. 2d 166 (D.N.J. 2003) ................................................................................23

*In re Cendant Prides Corp. Sec. Litig.*,
    243 F.3d 722 (3d Cir. 2001) ...........................................................................................12

iii

*In re Charter Commc'n, Inc. Sec. Litig.*,
    MDL 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ..................... *passim*

*In re Continental Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ........................................................................7, 8

*In re Corel Corp. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ..............................................................19

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ..................................................................19

*In re Critical Path Sec. Litig.*,
    No. C 01-00551, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ...................23

*In re Cylink Sec. Litig.*,
    274 F. Supp. 2d 1109 (N.D. Cal. 2003) ...........................................................23

*Danis v. USN Commc'n, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999) .....................................................................20

*Di Giacomo v. Plains All Am. Pipeline*,
    No. 99-4137, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 19, 2001) ................7, 11, 12

*In re DPL Sec. Litig.*,
    307 F. Supp. 2d 947 (S.D. Oh. 2004) ..............................................................23

*In re Elan Sec. Litig.*,
    No. 02 Civ. 0865, 2005 U.S. Dist. LEXIS 6782 (S.D.N.Y. Apr. 19, 2005) ..................23

*In re Enterasys Networks, Inc. Sec. Litig.*,
    No. C-02-071-M (D.N.H.) ...........................................................................23

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................14

*Faircloth v. Certified Fin., Inc.*,
    No. 99-3097, 2001 U.S. Dist. LEXIS 6793 (E.D. La. May 16, 2001) .........................11

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) .......................................................................7, 17

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ....................................................................7, 8, 16

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    No. 02-CV-2755 (W.D. Cal.) ...........................................................23

*In re Gen. Instruments Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ...............................................19

*In re Gen. Pub. Utils. Sec. Litig.*,
    No. 79-1420, 1983 U.S. Dist. LEXIS 11641 (D.N.J. Nov. 16, 1983) ...............................21

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...........................................................7, 10, 11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) .....................................................10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..........................................................................15

*In re Heritage Bond Litig.*,
    MDL 02-ML-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...................9

*In re Homestore.Com, Inc. Sec. Litig.*,
    No. 01-CV-1115 (W.D. Cal.) ...........................................................23

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*,
    3 F. Supp.2d 1208 (D. N.M. 1998) ..................................................23

*In re HPL Techs., Inc., Sec. Litig.*,
    366 F. Supp, 912 (N.D. Cal. 2005) ..................................................23

*In re Impath, Inc. Litig.*, Order Awarding Attorney's Fees,
    No. 03 Civ. 5667 (DAB) (S.D.N.Y. Jun 13, 2005) ...........................23

*In re Infospace, Inc. Sec. Litig.*,
    330 F. Supp. 2d 1203 (W.D. Va. 2004) ...........................................23

*In re Interpublic Sec. Litig.*,
    No. 03 Civ. 6527, 2004 U.S. Dist.. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ...................23

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................................10

*Kelly et al v. Gillespie*,
    5:03-cv-04208-JAR-JPO ...................................................................20

v

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) .......................................................................8

*In re Linerboard Antitrust Litig.*,
    333 F. Supp. 2d 341 (E.D. Pa. 2004) ..........................................................7

*In re Lucent, Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ............................................................23

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................19, 20

*In re Medical X-Ray Antitrust Litig.*,
    No. 93-5904, U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)..................19

*In re Michael Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................17

*In re Motorola Sec. Litig.*,
    No. 03 C 287, 2003 U.S. Dist. LEXIS 12651 (N.D. Ill. July 16, 2003) ...........23

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................12

*Nichols v. Smithkline Beecham Corp.*,
    No. 00-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) .........7, 12

O'*Keefe v. Mercedes-Benz, USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)..................................................................7

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................8

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ......................................................................8

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
    No. 77-39, 1984 U.S. Dist. LEXIS 23,595 (N.D. Ill. Sept. 14, 1984) ...............8

*In re Providian Financial Corp. Sec. Litig.*,
    No. C 01-3952 (N.D. Cal.)........................................................................23

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998)........................................................................7

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996) ................................................................14

*Rawlings v. Prudential-Bache Properties, Inc.*,
   9 F.3d 513 (6th Cir. 1993) ...........................................................................8

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ..........................................................16, 21

*Retsky Family Ltd. P'ship v. PriceWaterhouse LLP*,
   No. 97-7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) ................7

*In re Rite Aid Corp. Sec. Litig. ("Rite Aid II")*
   396 F.3d 294 (3d Cir. 2005) .............................................................7, 8, 9, 12

*In Rite Aid Sec. Litig. ("Rite Aid III")*
   362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................................................10, 11, 12

*In re Riverstone Networks, Inc. Sec. Litig.*,
   No. C 02-3581 PJH, slip op. (N.D. Cal. May 17, 2005) .................................23

*Roberts v. Texaco*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................12

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .............................................................11

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) .....................................................................7

*Slomovics v. All For A Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ................................................................13

*Strong v. BellSouth Telcoms., Inc.*,
   137 F.3d 844 (5th Cir. 1998) ........................................................................11

*Swedish Hosp. Corp. v. Shahala*,
   1 F.3d 1261 (D.C. Cir. 1993) .........................................................................8

*In re Symbol Techs., Inc. Sec. Litig.*
   (E.D.N.Y.) ...................................................................................................23

*Taubenfeld v. Aon Corp.*,
   No. 04-3140, 2005 U.S. App. LEXIS 13310 (7th Cir. July 5, 2005) ......... *passim*

vii

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...............................................................................23

*In re Union Carbide Corp. Customer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989)..................................................................................8

*In re United Telecom. Inc. Sec. Litig.*,
    No. 90-2251, 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994)............................14, 18

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
    9 F.3d 849 (10th Cir. 1993) ...........................................................................7, 18

*Wagner v. StarMed Personnel*,
    5:02-cv-04127-JAR-KMH ..............................................................................20

*In re Warner Commc'n Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................15, 19

*In re Washington Pub. Power Supply Sys. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .........................................................................17

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ....................................................................11

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ..........................................................12

## STATUTES

15 U.S.C. § 78u-4(a)(6) .................................................................................................6

viii

# I.     __INTRODUCTION__

Lead Plaintiffs respectfully submit this memorandum of law in support of the Class Counsels' Petition for an Award of 30% of the proposed settlement as Attorneys' Fees and Reimbursement of Expenses in the amount of $226,877.21 (which is substantially less than the $350,000 "outside" number stated in the Notice to the Class).

The $30 million settlement achieved for the Class in this federal securities class action is truly extraordinary for several reasons encompassing both the result itself, as well as the unique circumstances in which the result was achieved.  First, unlike the typical 5%-6% recovery of estimated damages the typical securities class action, *In re Charter Commc'n, Inc. Sec. Litig.*, MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *52 (E.D. Mo. June 30, 2005), the recovery here is approximately 29%.  However, even more importantly, this result was achieved only after the gravamen of the initially filed actions became untenable and the law firms which filed those actions elected not to proceed in the prosecution of the case, leaving to Schoengold Sporn Laitman & Lometti ("SSLL"), on its own, both to investigate and originate entirely new legal theories, prosecute the action and achieve the $30 million recovery.  The novel legal theories asserted in the Amended Complaint were pursued despite the fact that they were *contrary* to the findings of Westar, Inc.'s detailed internal investigation and report (the "Debevoise Report") and without the benefit of any parallel securities fraud prosecution.  Indeed, none of the criminal prosecutions of Westar's two former officers asserted violations of any federal securities statute.

Furthermore, there were real obstacles in terms of factual and legal defenses which as of the date of the Settlement have yet to be decided.  Here, the lynchpin to any securities fraud claim – namely, dramatic drops in Westar's common stock price clearly attributable to misconduct – was missing, giving rise to loss causation defenses as well as attacks on damage

quantification.  Further, the principal legal theory that Westar's Restructuring disclosures were materially false and misleading was subject to serious statute of limitations defenses which would have to have been fought throughout the litigation.  All of these unique facts underscore the appropriateness of the award sought herein, particularly since 30% or greater is the percentage routinely awarded for settlements of this size, even absent the excellent recovery achieved and the particular difficulties faced here.

The settlement has resulted in nearly universal approval by the Class.  Although 17,095 notice packets have been sent to the Class and notice has been published in one national and three local newspapers, *no one* has objected to the proposed settlement as not being fair, reasonable and adequate.  Also, only two Class members, representing .012% of the damaged shares, have objected to the Class Counsel's proposed fee and expense application, and only 38 Class members, owning 311.26 shares (also less than .01% of the damaged shares), have elected to "opt out" of the Class.  This demonstrates almost unanimous support for the proposed settlement and, as shown below, is entitled to great weight and favorable consideration by the Court.

## II.   BACKGROUND

As set forth more fully in the accompanying Declaration of Joel P. Laitman (the "Laitman Declaration"), the award of attorneys' fees in this unique action should be considered in the context of the unusual history of this litigation.  Beginning on January 14, 2003 and continuing through March 10, 2003, five lawsuits were filed by five separate plaintiffs and their counsel on behalf of purchasers of Westar common stock, alleging violations of the federal

securities laws by the defendants.[1]  These cases were all triggered by a December 26, 2002 announcement of a subpoena by the Federal Energy Regulatory Commission ("FERC") in connection with power trades with Cleco Corporation ("Cleco").  This announcement caused Westar stock to decline by $0.88 per share (from $10.80 per share to $9.98 per share) on December 30, 2002.  However, within one week, Westar's stock price had returned to over $10.00 per share, and, by the date of the Motion for Lead Plaintiffs and Lead Counsel on May 2, 2003, Westar's stock price had reached $14.00 per share.  Also, there was no further FERC inquiry into these trades.  This meant that, under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), there effectively were no damages due to the FERC announcement since the PSLRA limits damages to the difference between the price paid and the mean trading price for the 90 day period after the corrective disclosure.

As of May 2, 2003, the five firms which had initially filed federal securities law cases had withdrawn their complaints, failed to move for lead counsel or withdrawn their motions for appointment as lead counsel.  Thus, as of May 2, 2003, SSLL was the ***only*** firm willing to continue to prosecute the federal securities claims.

On July 15, 2003, after completing a vigorous and thorough investigation into potential claims, Class Counsel filed the Amended Complaint against the defendants.[2]  This investigation included engaging a Kansas accounting expert who had followed the Kansas Corporation Commission ("KCC") proceedings in connection with the Westar restructuring as well as

---

[1]     Those cases were styled as follows: *Kahn v. Haines*, C.V. 03-4003; *Epstein v. Westar Energy, Inc.*, No. 03-4007; *Giles v. Haines*, No. 03-4014; *Halvorsen v. Haines*, No. 03-4020; and *Vance v. Haines*, No. 03-4031.

[2]     The defendants in this action are: Westar, David Wittig ("Wittig"), Douglas Lake ("Lake"), Paul Geist ("Geist"), Carl M. Koupal, Jr. ("Koupal"), Richard D. Terrill ("Terrill"), Gene A. Budig ("Budig"), Frank J. Becker ("Becker"), John C. Dicus ("Dicus") and John C. Nettels, Jr. ("Nettels")  (collectively, the "defendants").

forensic accounting and damages experts.  The Amended Complaint did not contain allegations arising from the FERC subpoena, but novel allegations including that there were material misrepresentations and omissions in Westar's SEC filings and public statements concerning Westar's restructuring into regulated and unregulated businesses announced beginning in March 2000 (the "Restructuring").[3]  It was also alleged that Westar's Proxy filings were materially false and misleading in that, as part of its approval of the Restructuring, Westar's Board of Directors without informed consent approved massive change of control and compensation provisions that benefited senior officers, and that Westar's Proxy filings contained inadequate disclosure of senior management compensation, particularly to CEO Wittig.

*These new allegations permitted an extension of the Class Period by nearly an entire year.*  Attendant with these novel allegations, however, were immediate legal difficulties: the Restructuring allegations posed statute of limitations difficulties since public criticism of the Restructuring was arguably made more than two years before the Amended Complaint was filed in July 2003, and the Proxy allegations additionally posed loss causation difficulties.

These allegations were asserted, as noted, despite the fact that the Debevoise Report, issued following an internal Westar investigation, found that there were no material misrepresentations in connection with the Restructuring or in any of Westar's public filings.

On October 20, 2003, defendants filed **seven** separate motions to dismiss the Amended Complaint.  The motions raised numerous arguments and defenses in support of dismissal,

---

[3]       The misrepresentations included that the Restructuring would "unlock value" in Western Resources, Inc. ("WRI") utilities and that valuable consideration was given to the WRI utilities in return for the grant of substantial Westar equity to the unregulated group when, in fact, there was an undisclosed effective cancellation of $1 billion in debt owed by the unregulated group to the WRI utilities.

including statute of limitations and loss causation defenses.[4]

Following full briefing on the seven motions to dismiss, the parties entered into settlement negotiations.  On December 1, 2004, January 31, 2005 and April 6 and 7, 2005, full day mediation sessions were held in New York with counsel for the twelve defendants and the numerous insurance carriers.  Prior to the first meeting, all sides were asked to submit confidential briefs of fact and law, including damages analyses.  These day-long sessions were mediated by Gary McGowan, Esq., a well-respected mediator satisfactory to all sides.  The sessions were preceded and followed by further ongoing negotiations between the parties and the mediator.

Ultimately, after long and intensive negotiations, the parties reached a settlement of $30,000,000 in cash, as memorialized in the Stipulation of Settlement (the "Stipulation") dated May 31, 2005, subject to the approval of the Court.  The proposed Settlement called for a fairness hearing pursuant to Federal Rule of Civil Procedure 23(c) on proper notice to the Class.

On June 6, 2005, following a telephonic hearing, the Court granted an Order preliminarily approving the proposed settlement and directing notice to the Class by first class mail and by publication.  Class Counsel have duly complied with said Order as attested to by the Affidavit of Jose Fraga of the Garden City Group, Inc., the administrator agreed upon by the parties, and the matter is now before the Court for a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

---

[4]     Concerning loss causation, defendants argued that there were no Westar stock price declines caused by the alleged misrepresentations.  For example, defendants argued that a stock price decline on July 20, 2001 was due to the announcement of a KCC regulatory action and not due to the alleged misrepresentations; that the single stock price decline that could arguably be attributed to the Proxy claims actually occurred *before* any partially corrective disclosure; and that a November 7, 2002 stock price decline was due to announcement of bank fraud that was unrelated to the fraud alleged in the Amended Complaint and, in any event, was quickly followed by a stock price rebound two days later.

Class Counsel thus have achieved a settlement of $30,000,000 in cash (plus interest from June 27, 2005) that they believe is an excellent result and merits the approval of the Court.  Class Counsel have achieved this recovery on behalf of the Class, consisting of all persons or entities that purchased the common stock of Westar during the period from March 29, 2000 to November 8, 2002 (the "Class Period").  Class Counsel believe this is an outstanding recovery as it provides a return of approximately 29.13% of realistic maximum damages, which is substantially higher than the 5%-6% norm of settlements of securities class actions.

III.    **THE AWARD REQUESTED BY CLASS COUNSEL IS FAIR AND REASONABLE BASED ON THE PSLRA STANDARD AND THE *JOHNSON* FACTORS**

A.    **Standards for Awarding Attorneys' Fees in Common Fund Cases**

It is well-settled that attorneys who achieve a benefit for class members are entitled to be compensated for their services.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  Congress and courts throughout the nation have made clear their preference for using the percentage-of-the-fund method in determining attorneys' fees in securities class actions.  In late 1995, Congress amended the Securities Exchange Act of 1934 through the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(6), and indicated its preference for the use of the percentage method.  The PSLRA states that "Total attorneys fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed *a reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class[.]" *Id.* (emphasis added).  Even prior to passage of the PSLRA, the Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984), expressed its view that percentage of the benefit conferred is the proper method: in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class." *Id.* at 900 n.16.

6

The Tenth Circuit, even before the passage of the PSLRA, also expressed a preference for the percentage-of-the-fund method even though courts may use either a percentage of the fund method or lodestar method when awarding attorneys' fees from a common fund.[5] *Gottlieb v. Barry*, 43 F.3d 474, 4833 (10th Cir. 1994) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993)). The Tenth Circuit has approved selection of the percentage-of-the-fund method because it, *inter alia*, most closely matches the methodology actually employed in the marketplace; provides incentive to counsel to pursue actions on behalf of large groups of investors; is less subjective than the lodestar method; and gives primary consideration to the results obtained by counsel.[6]

In *Continental I*, Judge Posner of the Seventh Circuit maintained that a percentage-of-the-fund approach most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases. 962 F.2d at 572. If this were non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33.33% to 40% of the recovery. *See Retsky Family Ltd. P'ship v. PriceWaterhouse LLP*, No. 97-7694, 2001 U.S. Dist. LEXIS 20397, at *10 (N.D. Ill. Dec. 6, 2001); *In re Shell Oil Refinery,* 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingent

---

[5]     Under the lodestar method, the number of hours reasonably expended by Class Counsel is multiplied by the reasonable hourly rate. Courts may award a "multiplier" to the lodestar to recognize plaintiffs' counsel's additional risk in taking on the case. Courts have typically awarded multipliers ranging from three to six times the lodestar. *See* cases cited at Sec. II.D.1, *infra.*

[6]     *See also In re Rite Aid Corp. Sec. Litig.* ("*Rite Aid II*"), 396 F.3d 294, 300 (3d Cir. 2005); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("*Continental I*"); *Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 U.S. Dist. LEXIS 7061, at *94 (E.D. Pa. Apr. 22, 2005); *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 343, 341 (E.D. Pa. 2004); *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 17 (D.D.C. 2003) (28% fee award); O'*Keefe v. Mercedes-Benz, USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003); *Di Giacomo v. Plains All Am. Pipeline*, No. 99-4137, 2001 U.S. Dist. LEXIS 25532, at *17 (S.D. Tex. Dec. 19, 2001) (awarding 30% of fund, or 5.3 multiplier).

fee is between 33 1/3% and 40%"); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77-39, 1984 U.S. Dist. LEXIS 23,595, at *40-41 (N.D. Ill. Sept. 14, 1984) ("The percentages agreed on [in non-class litigation] vary, with one-third being particularly common").  In addition, courts have found that the percentage of recovery method allows courts to award fees from a settlement fund in a way that rewards counsel for success and penalizes it for failure.  *Rite Aid II*, 396 F.3d at 300; *see also Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986).  Finally, the percentage method is also a more efficient use of judicial resources than the lodestar method, because it is "bereft of largely judgmental and time-wasting computations of lodestars and multipliers."  *In re Union Carbide Corp. Customer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 179 (S.D.N.Y. 1989); *see also Continental I*, 962 F.2d at 573; *Gaskill*, 942 F. Supp. at 386.

As does the Tenth Circuit, the majority of Circuits now apply a percentage approach in common fund cases either exclusively[7] or at the discretion of the district court.[8]

### 1.  An Award Fees of 30% Is Well Within the Standard Award in Similar Cases

Empirical studies of the application of the percentage approach by federal courts confirm that while there is a sliding scale as to the percentage awarded based on the size of the settlement, thirty percent is well within the median award particularly for settlements in the $10 to $30 million range.  The courts in *Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, at *1, and

---

[7]    The Third Circuit, the Eleventh Circuit and the District of Columbia Circuit mandate the percentage method in common fund cases.  *See Rite Aid II*, 396 F.3d at 306 ("we reiterate that the percentage of common fund approach is the proper method of awarding attorneys' fees"); *Swedish Hosp. Corp. v. Shahala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993); *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

[8]    *See, e.g., Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); s*ee also In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) (upholding award of 33% of common fund in shareholder derivative suit).

*Rite Aid II* [9] recently recognized three separate studies which confirm that an award of 30% is well within the normative range for attorneys' fees in securities fraud class actions:

> one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a medial percentage recovery range of 27-30%; an third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard."

*Rite Aid II*, 396 F.3d at 303.

## 2. An Award of 30% Is Even More Appropriate Here Given Both the Originality of the Work and Difficulty and Undesirability of the Case

Courts will not hesitate to recognize extraordinary efforts by class counsel, whether in exceptionally creative and original pleadings or exceptional difficulty in litigating as in the within case. The Seventh Circuit very recently recognized that class counsel faced tremendous difficulties where an external investigation did not find a securities violation and therefore affirmed a 30% fee in connection with a $7.5 million settlement. *See Taubenfeld v. Aon Corp., No. 04-3140*, 2005 U.S. App. LEXIS 13310, at *7 (7th Cir. July 5, 2005). That reasoning is analogous here since the external independent investigation by Debevoise specifically found no misrepresentations in *any* of Westar's public filings. The court in *Taubenfeld* noted, "Indeed, an SEC investigation essentially cleared Aon of any perceived wrongdoing and bolsters the finding that this was not an 'easy' case for lead counsel." *Id. See also In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *66-67 (C.D. Cal. June 10, 2005) (awarding 33.33% and noting novelty and complexity of a new law passed after the initial complaint was filed, requiring plaintiffs to undertake extensive additional legal and factual

---

[9]    While the courts in both *Charter Commc'n* and *Rite Aid II* recognized the validity of these studies, the courts in those cases awarded percentages less than 30% using a sliding scale since the settlement amounts were substantially greater than in this action – more than $125 million each.

9

analysis, and also that the issues were factually complex); *In Rite Aid Sec. Litig. ("Rite Aid III")*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving multiplier of 6.96 in part because counsel did not rely on the fruits of any official investigation); *In re APAC Teleservices, Inc. Sec. Litig.*, No. 97-9145, slip op. at 2-3 (S.D.N.Y. Dec. 10, 2001) (awarding 33.33% of settlement fund plus expenses and recognizing that there was no "boot-strapping" by plaintiffs' counsel); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ("this is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill").

Here, it was not merely that Class Counsel had to overcome the findings of the Debevoise Report and could not piggy-back a governmental securities fraud prosecution, but rather that the gravamen of the then-existing case had evaporated as had its counsel who asserted it.  SSLL originated new legal theories which dramatically expanded the class of investors and then defended those theories with all their complexities against substantial and skill opposition.

## B.    The Fee Request Meets the Requirements of the *Johnson* Factors

Whether the percentage of the fund or the lodestar method is used as a "cross-check," the Tenth Circuit requires courts to consider the twelve factors originally developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for analyzing fee awards in common fund cases.  *See Gottlieb*, 43 F.3d at 482-83; *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).  The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Gottlieb*, 43 F.3d at 482 n.4.  As set forth below, the fee request in this action meets the requirements of the *Johnson* factors.

**1.      Time and Labor Required:  The Lodestar Cross-Check
Confirms that the Requested Fee Is Fair and Reasonable**

In order to analyze the time and labor required on a particular case, numerous district courts have applied the percentage fee method to common fund cases using the lodestar as a cross-check.  *See, e.g., Rite Aid III*, 362 F. Supp. 2d at 589 (approving multiplier of 6.96); *Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *38-39 (approving plaintiff's request of 30%, or a 5.3 multiplier under lodestar method) (citing *In Re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)); *Faircloth v. Certified Fin., Inc.*, No. 99-2097, 2001 U.S. Dist. LEXIS 6793, at *9 (E.D. La. May 16, 2001) (calculating fees under both percentage fee method and lodestar method); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (trial judge set benchmark fee of thirty-percent (30%) and awarded a lodestar-based enhancement, so that the final percentage was 33.33%); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000).

The lodestar method is calculated by multiplying the number of hours reasonably expended by Class Counsel times the reasonable hourly rate.  *See Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *17 (citing *Strong v. BellSouth Telecoms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)).  However, under a hybrid percentage/ lodestar method, the Court need "not conduct a detailed analysis of charged hours and hourly rates.  To do so would undermine the utility of the percentage fee method."  *Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *31.  *See also Rite Aid*

11

*II*, 396 F.3d at 306 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.").

This case has been litigated over the past two-years, during which time Class Counsel filed a detailed and unique consolidated amended complaint, opposed seven separate motions for dismissal, retained industry, accounting and damage experts, reviewed hundreds of thousands of documents, examined four key Westar employees, and successfully negotiated the Settlement after extensive, arms'-length and hard-fought negotiations.  Class Counsel have expended over 4,272.75 hours of work at an average hourly rate of $512.15,[10] reflecting a lodestar of approximately $2,320,430.  An award of 30.0% under the lodestar method results in a fractional multiplier of 3.96, well within the range of multipliers awarded by courts around the country. *See, e.g., Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772 at *69 (5.61 multiplier "is within the range of multipliers awarded in comparable complex cases"); *Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 U.S. Dist. LEXIS 7061, at *77-78 (E.D. Pa. Apr. 22, 2005 ) (awarding 30% of settlement fund or $19 million, a multiplier of 3.15); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (4.7 multiplier, and cases cited therein); *Rite Aid III*, 362 F. Supp. 2d at 589 (6.96 multiplier); *Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *38-39 (5.3 multiplier); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier; "multipliers of between 3 and 4.5 have become common") (internal quotations marks omitted); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) (5.5 multiplier); *see also In re Cendant Prides Corp. Sec. Litig.*, 243 F.3d 722, 742-43 (3d Cir. 2001) (court "strongly" suggested a multiplier of 3 even though the case was neither legally nor factually complex and

---

[10]      Class Counsel utilized a "blended billing rate" of all the attorneys who worked on this matter in order to calculate the average billing rate to be used in the lodestar analysis. *See, e.g., Rite Aid II*, 396 F.3d at 306.

the entire duration of the case from the filing of an amended complaint to the submission of a settlement agreement was only four months).

### 2.    The Novelty and Difficulty of the Litigation: Risks of Establishing Liability and Damages

As noted above (and in the Laitman Declaration) each aspect of the novel claims had attendant legal difficulties.  The Restructuring allegations had attendant statute of limitations issues, while the Proxy allegations brought loss causation difficulties.

Moreover, damages were extremely difficult to determine and were arguably far less that $103 million.  Thus, the recovery here assuming lesser damages is substantially greater than 29.9%.  For example, the largest component of damages arose from Westar's stock price decline following the KCC's rejection of the Restructuring and rejection of a proposed rate increase.  It is arguable that most of the stock price decline was not related to the disclosure of the "truth" regarding prior misrepresentations, but rather was only a market reaction to the rejection of a Restructuring plan and rate increase which the market favored.  Further, all damages arising from alleged Proxy violations may well have been excluded since the stock price dropped *before* there was any potentially corrective disclosure.

Another major difficulty Lead Plaintiffs faced was establishing that the defendants acted with scienter.  *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (noting the difficulty of proving scienter at trial).  First, in connection with the proposed Restructuring, defendants argued that scienter could not be imputed to the Company since Wittig's fraudulent schemes were meant to benefit only him and in fact were adverse to WRI, which was victimized.  Moreover, establishing the roles of each of the numerous individual defendants in the various complex fraudulent schemes would be daunting.

13

While Lead Plaintiffs were confident of their ability to prove their claims and to effectively rebut Defendants' contentions, Lead Plaintiffs recognize the force of defendants' arguments.  Also, a jury could place considerable weight upon the credibility and testimony of defendants and the other witnesses they would present at trial, many of whom are well-respected local businessmen, and all of whom would deny any knowledge of a fraud.

### 3.     The Requisite Skill to Perform the Legal Services Properly

Class Counsel respectfully submit that they rendered excellent and effective representation to Plaintiffs and the Class in these actions.  First, Class Counsel took on this case when other attorneys abandoned it.  Further, after a detailed and exhaustive investigation that included, *inter alia*, the retention of an expert on KCC deliberations and a damages expert, Class Counsel crafted an Amended Complaint that put forward unique and creative allegations that others, including in internal and external investigators of Westar, did not pursue.  Thereafter, Class Counsel were confronted with a significant number of difficult legal and factual issues throughout the course of this case, as set forth above.  The fact that Class Counsel, confronted with these multiple obstacles, were able to secure a $30 million cash settlement for the benefit of the Class demonstrates the high quality of their performance.  *See In re United Telecom. Inc. Sec. Litig.*, No. 90-2251, 1994 U.S. Dist. LEXIS 9151, at *10 (D. Kan. June 1, 1994) ("Successful prosecution of the instant case required a high degree of skill and expertise in the field of class action securities fraud."); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (the quality of the work "necessarily includes the difficulty of the task performed").

The quality of defense provided by opposing counsel is important in evaluating the quality of the result produced by Class Counsel.  *See In re Prudential Sec. Inc. Ltd. P'ship Litig.*,

912 F. Supp. 97, 103 n.17 (S.D.N.Y. 1996).  Class Counsel here squared off against well-financed defendants who hired nationally known firms with experienced and skilled attorneys to mount an aggressive defense – including Davis, Polk & Wardwell; Byan Cave; Armstrong Teasdale; Hughes Hubbard & Reed; and Berkowitz Stanton Brandt Williams & Shaw.  While Class Counsel were outnumbered in both manpower and financial resources, they nevertheless devoted the time, effort and money necessary to prosecute the action to a successful conclusion.

In the end, the skill and quality of Class Counsel's work is best reflected by the favorable settlement obtained for the benefit of the Class.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985) ("The quality of work performed in a case that settles before trial is perhaps best measured by the benefit obtained.").  The $30 million settlement is an excellent result in both absolute terms and when balanced against the multitude of risks facing Plaintiffs.  This amount is at the "high end" of securities class action settlements. As set forth in *The Wall Street Journal*, May 10, 2004, "The median settlement in 2003 totaled $9.5 million in cases that involved regulatory investigations, compared to $5.3 million in cases that didn't[.]" (*citing* 2004 study by Cornerstone Research).

### 4.    This Case Precluded Other Employment by Class Counsel

SSLL is a relatively small firm with seven attorneys.  Due to the substantial full time engagement in the investigation, development, prosecution and negotiation of this case, SSLL was effectively precluded from actively engaging in other securities matters.  This is an important factor in the Court's determination that a 30% fee is fair and appropriate.

15

### 5. Customary Fee: The 30% Award Requested by
### Class Counsel Is Within the Range of Awards in Similar Cases

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court." *Taubenfeld*, 2005 U.S. App. LEXIS 13310, at *7. The 30% award requested, which amounts to $9 million, is an abundantly reasonable award that is well justified in light of the substantial benefit conferred on the Class, the very significant contingent risks faced in the litigation, and the quality of work performed throughout the case. As set forth above, many courts around the country have awarded common fund fees of 30% or more on a percentage basis, and studies have shown that the average award for recoveries over $10 million is approximately 30% of the settlement fund. In addition, courts in this Circuit and around the country have awarded fees of 30% or more of the recovery when the resulting fee exceeds $8 million in recognition of the substantial services performed by counsel and the risks undertaken. *See* Exhibits A and B.

### 6. Contingent Nature of the Fee

The small individual stakes involved in this consolidated action rendered it economically impractical for anyone to pay attorneys on a current, hourly basis to pursue the claims. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."). From the outset, this action has have been prosecuted by Class Counsel on an all "at-risk" contingent fee basis. Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Gaskill*, 160 F.3d at 361 ("Because they shift part of the risk of loss from the client to the lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee

would."); *Florin*, 34 F.3d at 565.  Class Counsel faced a significant possibility that they would

not be successful on the merits or on class certification and, hence, would not be compensated.

*See Taubenfeld*, 2005 U.S. App. LEXIS, at *7 (recognizing that counsel took on "significant

degree of risk of nonpayment").

   A class action was the only realistic avenue available to vindicate the rights of Class

members against the defendants.  Given the complex legal basis of this action and the appellate

procedures at defendants' disposal, "victory – even at the trial stage – is not a guarantee of

ultimate success."  *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y.

1993).

   Thus, Class Counsel risked a tremendous amount of their time and money with the

knowledge that it would be *lost* if the litigation proved unsuccessful.[11]  In *In re Washington Pub.*

*Power Supply Sys. Litig.,* 19 F.3d 1291 (9th Cir. 1994), the Ninth Circuit emphasized that:

> It is an established practice in the private legal market to reward attorneys
> for taking the risk of non-payment by paying them a premium over their normal
> hourly rates for winning contingency cases.  *See* Richard Posner, *Economic*
> *Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far
> exceed the market value of the services if rendered on a non-contingent basis are
> accepted in the legal profession as a legitimate way of assuring competent
> representation for plaintiffs who could not afford to pay on an hourly basis
> regardless whether they win or lose.  As the court observed in *Behrens v.*
> *Wometco Enter., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21
> (11th Cir. 1990), "[i]f this 'bonus' methodology did not exist, very few lawyers
> could take on the representation of a class client given the investment of
> substantial time, effort, and money, especially in light of the risks of recovering
> nothing."

19 F.3d at 1299-1300 (citations omitted).

---

[11]   Unlike defendants' counsel, who were paid on a non-contingent basis, Class Counsel here have thus far
received no compensation for their considerable efforts on behalf of the Class.  Yet, *like* defendants' counsel, Class
Counsel had to meet a payroll and pay their rent and other bills on a current basis.  It can be accurately observed that
while defense counsel are generally paid on a *per diem* basis, contingent plaintiffs' counsel are paid "perhaps."

### 7.    The Time Limitations Imposed by the Client or Circumstances

While the clients or the circumstances did not impose a specific time limitation (*e.g.*, a tender offer or a pending merger proposal), in the presence of the other *Johnson* factors, this isolated fact does not detract from Class Counsel's application for attorneys' fees. *See Uselton*, 9 F.3d at 854. Nevertheless, a rapid recovery allows the Class to benefit from the time value of money. Moreover, any delay by Class Counsel in filing the detailed, comprehensive amended complaint would obviously have given defendants an even stronger argument on a statute of limitations defense.

### 8.    The Amount Involved and Results Obtained

As set forth in detail above, the recovery of $30,000,000 on behalf of the Class is a most remarkable result in this case, especially given that Class Counsel investigated, developed and prosecuted this action alone after other counsel effectively abandoned the original claims against defendants and no other body, whether through Westar's internal investigation or the government's criminal investigation, pursued or even raised claims or charges of securities fraud against any defendant. *See United Telecom.*, 1994 U.S. Dist. LEXIS 9151, at *11-12 ("The substantial $28,000,000 cash settlement also supports the reasonableness of an award of one-third in attorneys' fees in the instant case."). Moreover, this excellent result is especially valuable as it provides the class with a valuable benefit at an early point in time, thereby avoiding delay and capturing the time-value of money. *See Taubenfeld*, 2005 U.S. App. LEXIS at *7-8 ("Given the legal hurdles that lead counsel faced in proving liability, the $7.5 million settlement obtained for the class at a relatively early point in time also seems reasonable and bears a rational relationship to the amount of attorneys' fees awarded."). Furthermore, according

18

to Lead Plaintiffs' damages expert, the Settlement represents approximately 29% of the reasonably recoverable damages in this case of $103,000,000, which is well above the norm in securities class actions. As attested by recent market studies, this Settlement is in the high-range of settlements other than "mega" settlements such as Enron, WorldCom, Cendant and the "IPO" cases, which are few and far between. *See id.* Courts have awarded 33.33% in cases where class counsel have recovered much less as a percentage of damages. *See, e.g.*, *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (awarding 33.33% where counsel recovered approximately 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001 (awarding 33.33% where counsel recovered approximately 11% of damages); *In re Medical X-Ray Antitrust Litig.*, No. 93-5904, U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998) (awarding 33.33% where counsel recovered 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8% where counsel recovered 10% of damages).

### 9.   The Experience, Reputation and Ability of the Attorneys

Class Counsel's standing and experience are similarly relevant in considering the application for counsel fees. *Warner Commc'n Sec. Litig.*, 618 F. Supp. at 749. Class Counsel in this case, who are able and experienced, have received national recognition for their efforts in the class action field. The law firm of SSLL was formed in 1962, and has practiced exclusively in the area of securities class action litigation for over 40 years. SSLL enjoys a nationally respected reputation in this field. *See*, *e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (court commended Schoengold & Sporn for "go[ing] the extra mile" in obtaining a settlement representing approximately 41% of the maximum recoverable damages

incurred by the class); *In re Bank One S'holder Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000); *Danis v. USN Commc'n, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999).

In *Maley*, Judge Colleen McMahon acknowledged SSLL's ability to obtain "an excellent benefit to the Class:"

> Through [SSLL's] efforts, after intensive investigation, concentrated litigation and extensive arm's-length bargaining, and without the benefit of any governmental agency's investigation, Class Counsel have secured a settlement fund which confers an excellent benefit to the Class ...."

186 F. Supp. 2d at 368. Judge McMahon further acknowledged SSLL's ability in open court:

> I can't ever remember having participated as a lawyer or a judge in a settlement of a securities fraud class action that yielded in excess of a forty percent rate of recovery.

*Maley v. Del Global*, Final Settlement and Fee Application Hearing Transcript, dated January 28, 2002.

In addition, the law firm of Joseph & Hollander is well-known to the Court. *See Bruch v. City of Topeka, Kansas, et al*, 6:04-cv-01015-JAR-JPO; *Kelly et al v. Gillespie*, 5:03-cv-04208-JAR-JPO; *Wagner v. StarMed Personnel*, 5:02-cv-04127-JAR-KMH.

Thus, Class Counsel had the experience, will and resources necessary to prosecute this case through trial and beyond, which contributed to the ultimate result.

### 10.   The Undesirability of the Case

As set forth above, there was high degree of undesirability associated with this litigation. This undesirability could not be reflected more clearly than by the fact that all five of the firms which originally filed federal securities claims had abandoned any desire to prosecute the action by May 2, 2003. *See* Laitman Declaration.

### 11.   The Nature and Length of the Professional Relationship with the Client

SSLL has fostered an extensive ongoing relationship with the Lead Plaintiffs. This relationship benefited the class by having Lead Plaintiffs who were thoroughly involved in all aspects of the litigation and were fully apprised of its progress.

### 12.   Awards in Similar Cases

We respectfully refer the Court to the earlier discussions at pp. 8-9, *supra*.

### C.   The Reaction of Class Members Favors the Requested Award

Numerous courts have recognized that "the paucity of objections validates the fairness of the fee request." *See Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, at * 59; *see also Ressler*, 149 F.R.D. 656; *In re Art Materials Antitrust Litig.,* MDL No. 436, 1983 U.S. Dist. LEXIS 10434, at *12 (N.D. Ohio Dec. 17, 1983); *In re Gen. Pub. Utils. Sec. Litig.*, No. 79-1420, 1983 U.S. Dist. LEXIS 11641, at *22 (D.N.J. Nov. 16, 1983). In this case, the Notice Of Class Action and Proposed Settlement provided that Class Counsel shall apply for an award of attorneys' fees in an amount not to exceed thirty percent (30.00%) of the Settlement Fund, or approximately $9,000,000.00, as well as reimbursement for its actual expenses. Over 17,095 notice packets were mailed to the Class. In addition, notice of the settlement was published in *The Wall Street Journal* and three local Kansas newspapers, *The Kansas City Star, The Wichita Eagle* and *The Topeka Capital-Journal*. Despite the size of the Class (approximately 66,000,000 damaged shares), Class Counsel have received *no* objections to the settlement, only two "objections" have been made to the requested fee award, and only 38 Class members, representing less than .01% of the eligible claimants, have "opted out" of the Settlement.

There are only two objections to the proposed attorneys' fees: Mr. James Smith and the New York State Teachers' Retirement System ("NYSTRS").[12] Mr. Smith's objection is made in two sentences objecting to the size of the fee award "without [obtaining] more specific information." Mr. Smith is admittedly unaware both that the fees sought are within well-accepted standards and that the fees sought are appropriate since the action was prosecuted by Class Counsel only after it was largely abandoned by other firms and after the originally asserted legal theory became untenable, requiring original investigation and the making of novel claims, which were fraught with difficulties including statute of limitations and loss causation. These facts, admittedly unknown to Mr. Smith, render his objection without merit.

The second objection is from NYSTRS and, though it is lengthier and purports to rely on legal authority, it fails for many of the same reasons. NYSRTS is a frequent objector to attorneys' fees in securities class actions.[13] Recently, the district courts in *Charter Commc'n* and *Rite Aid* rejected similar NYSTRS objections. In *Charter*, the court noted that NYSTRS failed to focus on the specific recovery achieved. 2005 U.S. Dist. LEXIS 14772, at *61.

---

[12]      Other than these two objections, there were only two other objections, neither of whom objected to the settlement nor proposed fees. The first was filed by Mr. & Mrs. John W. Price (dated July 9, 2005) and is not valid since the Prices are not members of the Class, having purchased stock entirely in 2005. Further, their "objection" is not really an objection to either the settlement or the proposed fees, but rather only an assertion that they believe Westar's Board of Directors should pay for Defendants Wittig's and Lake's legal representation. The second is from Ms. Lois K. Sheldon. She specifically states that she does *not* object to the settlement amount or the requested attorneys' fees, but rather to the Class description, which excludes those persons or entities that acquired shares through Westar's Dividend Reinvestment Plan. Although shares purchased through supplemental optional cash payments under the Dividend Reinvestment Plan are included, Class Counsel excluded Dividend Reinvestment participants who simply "rolled over" their dividend into Company shares since these "passive" acquisitions were not made in reliance upon material misrepresentations during the Class Period. *See In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1533 (D. Mass. 1991) (finding no reliance and, specifically, that fraud on the market theory is inapplicable to purchases made through dividend reinvestment program).

[13]      It is more than slightly ironic that had Lead Plaintiffs and SSLL not investigated and creatively drafted the Amended Complaint and expanded the Class Period after they were appointed Lead Plaintiffs and Lead Counsel, NYSTRS would have had *no recovery* since all five of the originally filed complaints had proposed class periods which would have excluded all of NYSTRS's stock purchases.

Here, NYSTRS's objection fails because it not only ignores the specific recovery achieved, but actually mischaracterizes the action itself and its sources.  The objection states this action is a "garden variety" federal securities case and proceeds to annex, purportedly in support, a myriad of truly "garden variety" cases generally where there was a low risk of non-recovery and nothing unduly complex about the litigation particularly because there were clearly adverse events, such as dramatic stock prices in response to disclosures of clear financial misconduct as reflected in accounting irregularities, financial restatements, investigations and other severe writedowns.[14]

These cases are inapposite on their face and the "garden variety" description is inaccurate here since the precise reason the originally filed actions were abandoned and the Amended Complaint's new legal theories faced both statute of limitations and loss causation defenses was

---

[14]    *See, e.g., In re Impath, Inc. Litig.*, Order Awarding Attorney's Fees, No. 03 Civ. 5667 (DAB) (S.D.N.Y. Jun 13, 2005) (*trading halted* on accounting irregularities disclosure); *In re HPL Techs., Inc., Sec. Litig.*, 366 F. Supp. 912 (N.D. Cal. 2005) (*72% price drop* on accounting irregularities disclosure); *In re Enterasys Networks, Inc. Sec. Litig.*, No. C-02-071-M (D.N.H.) (*61% price drop* on SEC investigation disclosure); *In re Providian Financial Corp. Sec. Litig.*, No. C 01-3952 (N.D. Calif.) (*60% price drop* on write down disclosure); *In re Critical Path Sec. Litig.*, No. C 01-00551, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) (*55% price drop* on improper revenue disclosure); *In re Homestore.Com, Inc. Sec. Litig.*, No. 01-CV-1115 (W.D. Cal.) (*over 50% price drop* on round-trip trading disclosure); *In re Cendant Corp. Sec. Litig.*, 243 F. Supp. 2d 166 (D.N.J. 2003) (*46% price drop* after restatement); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp.2d 1208, 1211-12 (D. N.M. 1998) (*46% price drop* on investigation of improper Medicare billing disclosure); *In re Symbol Techs., Inc. Sec. Litig.* (E.D.N.Y.) (*41% price drop* on revenue disclosure); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, No. 02-CV-2755 (W.D. Cal.) (*37% price drop* on revenue disclosure); *In re Elan Sec. Litig.*, No. 02 Civ. 0865, 2005 U.S. Dist. LEXIS 6782 (S.D.N.Y. Apr. 19, 2005) (*36% price drop* after revenue disclosure); *In re Interpublic Sec. Litig.*, No. 03 Civ. 6527, 2004 U.S. Dist.. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) (*35% price drop* on restatement); *In re Lucent, Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 444 (D.N.J. 2004) (*28% price drop* on earnings restatement disclosure); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002) (*26% price drop* on restatement); *In re Motorola Sec. Litig.*, No.03 C 287, 2003 U.S. Dist. LEXIS 12651 (N.D. Ill. July 16, 2003) (*23% price drop* on loan loss disclosure); *In  re DPL Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Oh. 2004) (*22% price drop* after write down disclosure); *In re Riverstone Networks, Inc. Sec. Litig.*, No. C 02-3581 PJH, slip op. (N.D. Cal. May 17, 2005) (*21% price drop* on write down disclosure); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109 (N.D. Cal. 2003) (*19% price drop* on overstatement of revenue); *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203 (W.D. Va. 2004) (*19% price drop* on revenue disclosure); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229 (S.D.N.Y. 2005) (*17% price drop* on FDA rejection of drug application).  (These price drops are derived from the complaints and/or press releases).

because there *were no clear unambiguous stock price declines* tied directly to alleged misconduct.  Further, the history of this case, which NYSTRS ignores entirely, demonstrates it is anything but a "garden variety" case: the gravamen of the original action became untenable, the firms asserting it abandoned attempts at further prosecution leaving a single law firm to investigate and assert wholly original legal theories  and then to achieve a $30 million settlement

NYSTRS's objection is also inaccurate in that it claims that counsel was "considerably assisted by the Debevoise Report." (Objection at p. 2).  As set forth in the Laitman Declaration, nothing could be further from the truth.   In fact, the Debevoise Report found that *no* misrepresentations had been made by Westar in connection with the Restructuring and *no* misrepresentations or omissions had been made in *any* Westar public filings.   (Laitman Declaration ¶ 10 (quoting from the language of the Report)).[15]   For these reasons NYSTRS's objection should be rejected.[16]

## IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES

Class Counsel also request reimbursement from the fund of their expenses in prosecuting this action, which total $226,877.21.  *See* Laitman Declaration, Ex. B.  These expenses went for investigation and research, expert consultant fees, filing fees, photocopying, and other necessary costs of the litigation.  This amount is reflected on the books and records kept by SSLL and by Joseph & Hollander, P.A., Local Counsel.  Given the scope of the suit and the size of the fund,

---

[15]     While certain factual findings from the Debevoise Report were integrated into the Amended Complaint, they were used despite the ultimate conclusions of the Report itself and thus Class Counsel could not rely on the Debevoise Report for the assertion of any of its legal claims.  Moreover, as discussed in the Laitman Declaration, these facts related solely to the alleged Proxy misrepresentations, which presented the most serious loss causation difficulties and thus represented the smallest component of the damages.

[16]     Finally, NYSTRS's arguments here (Objection pp. 6-8) of a "trend" of lesser fee awards due to the presence of institutional investors, and its citation to such cases, should be rejected for the precise reasons detailed by the Court in *Charter Commc'n*, 2005 U.S. Dist. LEXIS 14772, at *66, namely that this "trend" is only found "in a select few [so-called] mega-settlements."

these expenses are relatively low, and should be awarded to Class Counsel.  *See Taubenfeld*, 2005 U.S. App. LEXIS 13310, at *8 (affirming district court's rejection of objection to reimbursement of expenses of $111,054 even though notice to class advised that counsel would apply for reimbursement in an approximate amount of $100,000).  As noted above, the reimbursement of expenses sought is substantially less than the $350,000 set forth in the Notice to the Class.  No member of the Class has objected to the expense application.

## V.    <u>CONCLUSION</u>

This unique and creative litigation has produced a substantial benefit of $30,000,000 for members of the Class.  Without any assurance of success and in the face of substantial legal and factual obstacles, Lead Plaintiffs and their counsel undertook this case on a contingency basis, laid out the necessary monies to prosecute the Action and pursued the Action to a successful conclusion.  Class Counsel believe the proposed Settlement is eminently fair, reasonable and adequate and, accordingly, respectfully requests that the Court award them thirty percent of the recovery and reimbursement of their expenses of $226,877.21.

DATED:        August 25, 2005
              Topeka, Kansas

                                        Respectfully submitted,


By: __/s/ Christopher M. Joseph_____          By:_ /s/ Joel P. Laitman_____
Stephen M. Joseph (Kansas Bar 07452)             Samuel P. Sporn
Christopher M. Joseph (Kansas Bar 19778)         Joel P. Laitman
                                                 Christopher Lometti
                                                 Jay P. Saltzman
                                                 Frank R. Schirripa


**JOSEPH & HOLLANDER, P.A.**                      **SCHOENGOLD SPORN LAITMAN &**
500 North Market Street                           **LOMETTI, P.C.**
Wichita, KS 67214-3590                            19 Fulton Street
Phone: (316) 262-9393                             New York, New York 10038
Fax: (316) 262-9006                               Phone: (212) 964-0046
                                                 Fax: (212) 267-8137


*Plaintiffs' Local Counsel*                       *Plaintiffs' Lead Counsel*


26

**EXHIBIT A**

**PERCENTAGE FEE AWARDS**
**(arranged by percentage of common fund)**

| *Name of Case* | *Amount of Fee* | *% of Fund* |
|---|---|---|
| *See In re United Telecom. Inc. Sec. Litig.*, No. 90-2251, 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) | $9,333,333 | 33 |
| *Cimarron Pipeline Const., Inc. v. National Council on Comp. Ins.*, No. 89-822, 1993 U.S. Dist. LEXIS 19969 (W.D. Okla. June 8, 1993) | $11,660,000 | 33.33 |
| *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) | $3,285,000 | 45 |
| *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (receivership case) | $7,963,280 | 38 |
| *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469 (9th Cir. 1997) | $3,960,000 | 35 |
| *In re Consol. Pinnacle West Sec. Litig./Resolution Trust Corp.-MeraBank Litig.*, No. 88-1830-PHX-PAR (D. Ariz. Dec. 30, 1993) | $11,900,000 | 35 |
| *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) | $14,200,000 | 33.8 |
| *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (claims-made settlement), *cert, denied*, 120 S. Ct. 2237 (2000) | $13,300,00 | 33.33 |
| *In re MTC Elec. Tech. S'holder Litig.*, MDL No. 1059 (E.D.N.Y. Oct. 16, 1998) | $21,664,500 | 33.33 |
| *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) | $13,120,000 | 33.33 |
| *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) | $4,000,000 | 33.33 |
| *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280 (D. Minn. 1997) | $28,000,000 | 33.33 |
| *In re Greenwich Pharm. Sec. Litig.*, No. 92-3071, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. April 25, 1995) | $1,441,000 | 33.33 |

| Name of Case | Amount of Fee | % of Fund |
|---|---|---|
| *In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) | $7,166,666 | 33.33 |
| *Goldsmith v. Tech. Solutions, Co.*, No. 92-4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) | $1,533,333 | 33.33 |
| *Cohen v. Apache Corp.*, No. 89-0076, 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. April 21, 1993) | $2,150,000 | 33.33 |
| *In re Wedtech Sec. Litig.*, MDL 735 (S.D.N.Y. July 31, 1992) (cited in *Crazy Eddie*, 824 F. Supp. at 326) | $17,665,000 | 33.33 |
| *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) | $1,386,000 | 33.33 |
| *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999) | $2,583,333.33 | 33.33 |
| *In re Pub. Serv. Co. of New Mexico*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) | $10,527,000 | 33 |
| *Long v. Trans World Airlines, Inc.*, No. 86-7521, 1993 U.S. Dist. LEXIS 5063 (N.D. Ill. Apr. 15, 1993) | $1,304,000 | 32 |
| *Gaines v. Sears & Roebuck & Co.*, No. 76-310, 1980 U.S. Dist. LEXIS 11158 (N.D. Ill. April 9, 1980) | $1,075,000 | 31.4 |
| *Kurzweil v. Philip Morris Co.,* No. 94-2373, 1999 U.S. Dist. LEXIS 18378  (S.D.N.Y. Nov. 24, 1999) | $37,146,029 | 30 |
| *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) | $32,404,744 | 30 |
| *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992) | $10,200,000 | 30 |
| *Saunders v. Robinson/Humphrey/Am. Express, Inc.*, [1990 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,315 (N.D. Ga. May 23, 1990) | $5,052,000 | 30 |
| *In re Immunex Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash. 1994) | $3,908,940 | 30 |

| Name of Case | Amount of Fee | % of Fund |
|---|---|---|
| *In re Bioscience Sec. Litig.*, 155 F.R.D. 16 (E.D. Pa. 1994) | $4,575,000 | 30 |
| *In re Fiddler's Woods Bondholders Litig.*, No. 83-234, 1987 U.S. Dist. LEXIS 10016 (E.D. Pa. Oct. 22, 1987) | $1,961,997 | 30 |
| *In re M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. August 30, 1990) | $4,980,000 | 30 |
| *In re Businessland Sec. Litig.*, No. 90-20476, 1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 18, 1991) | $1,800,000 | 30 |
| *In re AnnTaylor Stores Sec. Litig.*, No. 91-7145, 1993 U.S. Dist. LEXIS 7053 (S.D.N.Y. May 25, 1993) | $1,440,000 | 30 |
| *In re Granada P'ship Sec. Litig.*, 803 F. Supp. 1236 (S.D. Tex. 1992) | $1,860,000 | 30 |
| *In re Residential Doors Antitrust Litig.*, MDL No. 1039, 1997 U.S. Dist. LEXIS 4292 (E.D. Pa. Jan 3, 1997) | $4,500,000 | 30 |
| *In re Intelligent Elects. Sec. Litig.*, No. 92-1905, 1997 U.S. Dist. LEXIS 19191 (E.D. Pa. Nov. 26, 1997) | $3,000,000 | 30 |
| *In re Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 22, 1998) | $1,290,000 | 30 |

**EXHIBIT B**

*Decisions Awarding Attorneys' Fees In Excess of $8 Million*

| *Name of Case* | *Amount of Fee* | *% of Fund* |
|---|---|---|
| *See In re United Telecom. Inc. Sec. Litig.*, No. 90-2251, 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) | $9,333,333 | 33 |
| *Cimarron Pipeline Const., Inc. v. National Council on Comp. Ins.*, No. 89-822, 1993 U.S. Dist. LEXIS 19969 (W.D. Okla. June 8, 1993) | $11,660,000 | 33.33 |
| *In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) | $9,600,073 | 33.33 |
| *In re Public Service Co. of New Mexico*, No, 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) | $10,527,000 | 33 |
| *In re Wedtech Sec. Litig.*, MDL 735 (S.D.N.Y. July 31, 1992) (cited in *Crazy Eddie*, 824 F. Supp. at 326) | $17,665,000 | 33.33 |
| *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280 (D. Minn. 1997) | $28,000,000 | 33.33 |
| *In re Med. X-Ray Antitrust Litig.*, No. 93-5904, U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) | $13,120,000 | 33.33 |
| *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (claims-made settlement) | $13,300,00 | 33.33 |
| *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) | $14,200,000 | 33.8 |
| *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) | $122,400,000 | 34.0 |
| *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) | $32,404,744 | 30 |
| *Kurzweil v. Philip Morris Co.,* No. 94-2373, 1999 U.S. Dist. LEXIS 18378  (S.D.N.Y. Nov. 24, 1999) | $37,146,029 | 30 |

| | | |
|---|---|---|
| *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992) | $10,200,000 | 30 |
| *Singer v. Nicor Inc.*, No. 02 C 5168 (N.D. Ill. 2004) | $11,700,000 | 30 |